**GRAND UNION COMPANY, Appellant,**

v.

**FOOD EMPLOYERS LABOR RELATIONS ASSOCIATION and United Food & Commercial Workers Pension Fund, et al.**

**GRAND UNION COMPANY, Appellant,**

v.

**FOOD EMPLOYERS LABOR RELATIONS ASSOCIATION and United Food & Commercial Workers Pension Fund, et al.**

**GRAND UNION COMPANY, Appellant,**

v.

**FOOD EMPLOYERS LABOR RELATIONS ASSOCIATION and United Food & Commercial Workers Pension Fund, et al.**

Nos. 85–6160, 86–5049 and 86–5077.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 21, 1986.

Decided Jan. 13, 1987.

Frank C. Razzano, Washington, D.C., for appellant.

Barry S. Slevin, with whom Jeffrey B. Cohen and Donald L. Havermann, Washington, D.C., were on the brief, for appellees.

Before MIKVA, RUTH BADER GINSBURG and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

This case dominantly involves the primacy of arbitration as the first recourse dispute resolution mechanism in contests about an employer's withdrawal liability under the Employee Retirement Income Security Act of 1974 (ERISA), codified in relevant part at 29 U.S.C. §§ 1001–1381, as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), codified in relevant part at 29 U.S.C. §§ 1381–1453. The MPPAA 1) imposes withdrawal liability on an employer that ceases participation in a multiemployer pension plan, 2) assigns initial responsibility to the plan for determining the amount of the employer's withdrawal liability, and 3) establishes procedures, centering on arbitration, for resolving disputes over withdrawal liability between employer and plan sponsor.

Appellant Grand Union Company (Grand Union) owns and operates supermarkets and food warehouses. Pursuant to collective bargaining agreements, Grand Union made contributions to appellee Food Employers Labor Relations Association and United Food & Commercial Workers Pension Fund (Fund). In March 1984, Grand Union sold stores to Food-A-Rama, another food sale chain. In November 1984, the Fund notified Grand Union, that, by reason of the sale to Food-A-Rama and Grand Union's cessation of participation in the pension plan, the Fund was calculating Grand Union's withdrawal liability.

Asserting qualification for the "sale of assets" exemption from withdrawal liability, 29 U.S.C. § 1384, Grand Union commenced this action in the district court—without first resorting to arbitration—for a declaration of its rights and liabilities, and attendant affirmative relief. Grand Union sued the Fund and certain individual Fund trustees. In addition to its claim against the Fund for declaratory and injunctive relief to stop assessment of withdrawal liability, Grand Union asserted claims for monetary and other relief against the Fund and individual Fund trustees for breach of fiduciary duty.

The district court dismissed Grand Union's principal declaratory and injunctive relief claim because Grand Union had failed to pursue and exhaust the arbitration remedy Congress ordered as a matter of first resort. That court dismissed Grand Union's breach of fiduciary duty counts for

failure to state a claim within the federal court's subject matter jurisdiction. *Grand Union Co. v. Food Employers Labor Relations Ass'n and United Food & Commercial Workers Pension Fund,* 6 Employee Benefits Cas. (BNA) 2531 (D.D.C.1985) [Available on WESTLAW, DCTU database]. In a subsequent order, the district court awarded attorney's fees and costs to the defendants (the Fund and individual Fund trustees). *Grand Union Co. v. Food Employers Labor Relations Ass'n and United Food & Commercial Workers Pension Fund,* No. 85–1551 (D.D.C. Dec. 11, 1985) (hereafter, D.D.C. Dec. 11, 1985 Order), *reprinted in* J.A. at 23–27 [Available on WESTLAW, DCTU database]. Grand Union appealed.

We affirm the district court's orders in all respects. Congress stated as the main rule under MPPAA that withdrawal liability claims shall be arbitrated before they are brought to court. Exceptions to the statute's "arbitrate first" rule are narrowly cabined and, we hold, do not accommodate this case. Furthermore, Congress did not authorize employers to sue pension fund trustees individually for breach of fiduciary duty on account of the fund's efforts to impose and enforce withdrawal liability. Finally, the award of counsel fees underscores the firmness of the "arbitrate first" rule and was fully justified in view of the circumstances this case presents.

## I. Background

### A.

The MPPAA added subtitle E to Title IV of ERISA, Pub.L. 93–406, secs. 4001–4082, 88 Stat. 829, 1003–35 (codified as amended at 29 U.S.C. §§ 1301–1461 and in scattered sections of 26 U.S.C.) (1974).[1] Subtitle E, 29 U.S.C. §§ 1381–1453, imposes liability on employers who withdraw from multiemployer pension plans. Under an exemption provision, 29 U.S.C. § 1384, an employer does not incur withdrawal liability when a sale of assets causes it to cease participation in a plan, if the sale satisfies detailed statutory requirements ensuring that the purchaser of the assets will take over the seller's obligations to the plan.

Upon an employer's withdrawal from a plan, MPPAA confides to the plan sponsor responsibility for determining the amount of withdrawal liability, notifying the employer, and collecting the amount due. *See* 29 U.S.C. §§ 1382, 1399(b)(1). On timely request, the plan sponsor is obliged to review and explain any aspect of the withdrawal liability determination questioned by the employer. *See* 29 U.S.C. § 1399(b)(2). If informal review does not resolve the differences between plan sponsor and employer, the statute commands arbitration: "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title, [*i.e.,* the prescriptions on establishment, calculation, and collection of withdrawal liability] shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1).

At arbitration and in court, the plan sponsor's determination is "presumed correct." 29 U.S.C. § 1401(a)(3)(A). The presumption can be overcome only if the challenger "shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous." *Id.* Any party to the arbitration may seek judicial review of the arbitrator's award, 29 U.S.C. § 1401(b)(2), but in court, "there shall be a presumption, rebuttable only by a clear preponderance of the evidence, that the findings of fact made by the arbitrator were correct." 29 U.S.C. § 1401(c).

### B.

Grand Union designed its sale of stores to Food-A-Rama with a view to MPPAA, and sought to meet the "sale of assets" exemption from withdrawal liability. The plan sponsor, however, notified Grand Union in November 1984 that the sale had effected Grand Union's withdrawal from the Fund, and that the withdrawal liability calculation was in preparation. In May 1985, before the Fund notified Grand Union of the amount it had calculated, without

---

1. Title IV of ERISA is codified as amended as Subchapter III of Chapter 18 of 29 U.S.C. When the MPPAA added subtitle E to Subchapter III, the previous subtitle E became subtitle F.

asking the Fund to review its liability determination, and without initiating arbitration, Grand Union filed suit in the district court.

Count I of Grand Union's complaint sought first, a declaration that Grand Union had satisfied the requirements of the sale of assets exemption from withdrawal liability, and second, an order enjoining the Fund from assessing liability based on the sale. Counts II through V alleged that individual trustees, in refusing to accept Food-A-Rama as a substitute contributing employer, had ignored plan documents and dishonored their fiduciary obligations. These counts sought to hold the trustees personally liable for losses resulting from their alleged wrongful conduct.

Ruling on defendants' motion to dismiss, the district court held Count I inadmissible unless and until Grand Union exhausted the arbitral process. The court further held that Congress did not accord employers any right to sue on alleged breach of fiduciary duty claims of the kind Grand Union stated in Counts II through V. *Grand Union*, 6 Employee Benefits Cas. (BNA) 2531. In addition, the court granted defendants' motion for attorney's fees and costs. D.D.C. Dec. 11, 1985 Order, J.A. at 23–27. Grand Union appeals each of these three rulings.

## II. DISCUSSION

### A.

We turn first to Grand Union's claim that the district court erred when it dismissed Count I of the complaint for failure to exhaust the arbitral process. This court recently addressed the arbitration require-ment of the MPPAA in *I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus.*, 727 F.2d 1204 (D.C.Cir.1984) (*Stockton*). Both sides feature *Stockton* as dispositive. The Fund stresses this court's recognition that, in the generality of withdrawal liability cases, "arbitrate first" is the statutory rule. *See Stockton*, 727 F.2d at 1207–08. Grand Union emphasizes that in *Stockton* itself, the district court, and then the panel on appeal, adjudicated the case on the merits although arbitration had not occurred.

*Stockton* was indeed an exceptional case. There, the I.A.M. Fund came to court, skirting the employer's request for arbitration, and demanded payment in full of the withdrawal liability it had assessed against the company.[2] Only on appeal, after losing on the merits in the district court, did the I.A.M. Fund plead the need for initial resort to arbitration. The situation was a classic one for the application of a waiver or preclusion analysis. But before the appellate panel dismissed the I.A.M. Fund's tardy plea for arbitration,[3] it sought to confirm that "resort to arbitration was neither a statutory prerequisite to the district court's jurisdiction, nor in the particular circumstances of [the *Stockton* case] . . . a requirement mandated by jurisprudential considerations." *Id.* at 1207.

As to the former, the panel aligned itself with sister courts that have uniformly interpreted the MPPAA's arbitration command as an "exhaustion of administrative remedies" requirement, not "an absolute jurisdictional bar." *Id.*[4] As to the latter, the panel observed that the issue before the district court and on appeal in *Stockton* was "purely one of statutory interpreta-

---

**2.** When the company invoked arbitration, as provided in 29 U.S.C. § 1401, the I.A.M. Fund initially responded that arbitration should await the promulgation of governing regulations under 29 U.S.C. § 1401(a)(2). *Stockton*, 727 F.2d at 1206. When it filed suit, the I.A.M. Fund contended that even if Stockton had a right to demand arbitration, the entire withdrawal liability had to be paid in the interim. *Id.*

**3.** Ironically, although the I.A.M. Fund did not succeed in getting the case out of court and into arbitration, it prevailed on the merits; the appellate panel disagreed with the district court on the statutory interpretation issue the case presented, and so reversed the summary judgment that court had entered for the employer, and remanded the case. *Stockton*, 727 F.2d at 1210–12.

**4.** Use of the term "jurisdictional" seems out of place in any event when the question is not whether the court is competent to hear the matter at all, but only whether its authority may be invoked sooner rather than later. *Cf. Center for Nuclear Responsibility, Inc. v. United States Nuclear Regulatory Comm'n*, 781 F.2d 935, 945 n. 4 (D.C.Cir.1986) (Ginsburg, J. dissenting).

tion"; there were no issues of fact or contract interpretation on which the judgment of an arbitrator would have special value. *Id.* at 1210. Moreover, judicial economy would have been sorely disserved by sending back to the arbitration starting line a case that had already gained a full audience in district court.

Grand Union takes *Stockton* to mean that the decision whether to require arbitration is within the discretion of the district court, to be exercised, case-by-case, on the basis of an analysis of the usefulness of arbitration to the resolution of each particular employer/plan sponsor dispute. Grand Union finds in *Stockton* the suggestion that, so long as the district court is "well equipped" to determine a withdrawal liability controversy, it should do so. *See* Brief for Plaintiff-Appellant at 20.[5] Were we to accept Grand Union's view of what *Stockton* means, we would drastically diminish the prime role Congress so plainly assigned to arbitration in the MPPAA dispute resolution scheme.

■ The *Stockton* opinion spoke of prior resort to arbitration under MPPAA "as a prudential matter rather than a jurisdictional bar." *Id.* at 1209. The expression "as a prudential matter" is susceptible of misinterpretation. In context, it is evident that the *Stockton* panel simply meant to distinguish a general but sometimes waivable rule from a nonwaivable ("jurisdictional") limitation. "Arbitrate first" is indeed a rule Congress stated unequivocally: "Any dispute between an employer and the plan sponsor ... concerning [withdrawal liability] shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). A district court's decision whether to proceed in the absence of initial resort to arbitration is thus not "prudential" in the dictionary sense of controlled only by the decisionmaker's sound, practical judgment. Rather, initial recourse to arbitration is a statu-

tory direction, one generally to be followed unless neither party timely presses the plea in abatement, *and* the court finds that deferring a court contest while the parties repair to arbitration "will neither lead to the application of superior expertise nor promote judicial economy." *Stockton*, 727 F.2d at 1210.

Having clarified that *Stockton* is a case in which the party so tardily pleading arbitration had effectively waived the right to do so, and in which other factors did not impel the court to delay adjudication, we recapitulate how Grand Union and similarly situated employers should proceed in these matters. First, Congress envisioned as the opening action a determination of the amount of withdrawal liability by the plan sponsor. The arbitrator and the court owe deference to the plan sponsor's determination, 29 U.S.C. § 1401(a)(3)(A), so that determination should be available before an outside dispute resolver enters the case.

Next, the employer may request the plan sponsor's review of "any specific matter." 29 U.S.C. § 1399(b). While the statute does not make such a request mandatory,[6] Congress apparently anticipated that informal review to clarify and perhaps pare down the issues would be routine, for the statute ties the time to initiate arbitration to the employer's request for, or the occurrence of, plan sponsor review. *See* 29 U.S.C. § 1401(a)(1).

When private ordering solely between the parties is unavailing, Congress instructed arbitration. *Id.* If and when court review eventually occurs, the "arbitrate first" rule has this carryover effect: the arbitrator's findings of fact will be controlling unless rebutted "by a clear preponderance of the evidence." 29 U.S.C. § 1401(c).

■ In sum, Grand Union's case fits within MPPAA's general dispute resolution scheme. The Fund here surely has not

---

5. Even on that score, as the district court explained, this case bristles with "issues within the special knowledge and expertise of a skilled labor and pension law arbitrator," for example, "the level of employer participation in the Fund, its compliance with the MPPAA bond and escrow requirements, the nature of the collective

bargaining agreement of Food-A-Rama, the alleged purchaser, as well as actuarial questions raised by the complaint." *Grand Union*, 6 Employee Benefits Cas. (BNA) at 2534.

6. The subsection 29 U.S.C. § 1399(b)(2)(A), sets out what the employer "may" ask or do.

waived its right to insist on "arbitration first."

### B.

In a string of laconic allegations, Counts II through V of the complaint in this action, Grand Union charged the Fund and certain named trustees with breach of fiduciary duty in failing to act "in accordance with the [plan] documents." *See* 29 U.S.C. § 1104(a)(1)(D). The alleged lapse stems from the Fund's refusal to accept as a contributing employer in Grand Union's place Food-A-Rama, the purchaser of Grand Union's stores. Had the Fund agreed to the substitution, Grand Union allegedly would have qualified for the "sale of assets" exemption (29 U.S.C. § 1384) from withdrawal liability.

■ The fiduciary duty to which Grand Union points is set forth in a section of Title I of ERISA (Protection of Employee Benefit Rights),[7] 29 U.S.C. § 1104(a)(1)(D), but under that Title only these persons are specifically authorized to sue: a plan participant, beneficiary or fiduciary, or the Secretary of Labor. *See* 29 U.S.C. § 1132(a). There is authority for suits by persons other than those specifically enumerated in the statute. *See Fentron Indus. v. National Shopmen Pension Fund,* 674 F.2d 1300, 1305 (9th Cir.1982). We agree with the district court, however, that the former authority runs in the opposite direction. *See Tuvia Convalescent Center, Inc. v. National Union of Hospital and Health Care Employees,* 717 F.2d 726, 729–30 (2d Cir.1983); *Pressroom Unions-Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889, 891–93 (2d Cir.), *cert. denied,* 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983); *see also New Jersey State AFL–CIO v. New Jersey,* 747 F.2d 891, 892–93 (3d Cir.1984).

By contrast, in the multiemployer plan portion of the statute, subtitle E of Title IV, "[an] employer" does appear in the enumeration of persons entitled to maintain actions under "th[at] subtitle." 29 U.S.C. § 1451(a)(1) (a "plan fiduciary, employer, plan participant, or beneficiary"). But Grand Union may not fit a Title IV handle to a Title I claim.

■ On appeal, Grand Union attempts to restyle Counts II through V as claims arising under subtitle E of Title IV, as well as under Title I. Even the most indulgent reading of the complaint, however, does not suggest this new tack. Moreover, if Counts II through V did qualify as subtitle E, Title IV disputes over the trustees' withdrawal liability determination, then they, like Count I, could not be entertained, because Grand Union failed to arbitrate first.

In sum, Grand Union has presented no tenable basis for disturbing the district court's dismissal of Counts II through V.

### C.

Finally, we review the district court's award of attorney's fees and costs to the Fund and trustees.[8] We can hardly improve upon the district court's cogent responses to Grand Union's objections; we state our agreement with, and here recount those responses.

First, the district court said, in accord with *T.I.M.E.–D C, Inc. v. I.A.M. Nat'l Pension Fund,* 616 F.Supp. 400 (D.D.C. 1985), that it was unnecessary to choose between the less demanding standard of *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983) (stating, in context of civil rights actions, that fees should be awarded prevailing plaintiffs "unless special circumstances would render such an award unjust"), and the more exacting standard, specifically geared to ERISA awards, set out in *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446 (9th Cir.1980). *See* D.D.C. Dec. 11, 1985 Order, J.A. at 24–25. We agree that the *Hummell* standard is satisfied in this case; therefore, like the district court, we do not

---

**7.** Title I of ERISA corresponds to Subchapter I of Chapter 18 of 29 U.S.C.

**8.** 29 U.S.C. § 1451(e) provides:
In any action under this section, the court may award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney's fees, to the prevailing party.

**72**

definitively select between that more demanding standard and the less stringent one stated in *Hensley.*

As restated by the district court, D.D.C. Dec. 11, 1985 Order, J.A. at 24–25, the prime factors emphasized in *Hummell* are:

(1) the losing party's culpability or bad faith;

(2) the losing party's ability to satisfy a fee award;

(3) the deterrent effect of such an award;

(4) the value of the victory to plan participants and beneficiaries, and the significance of the legal issue involved; and

(5) the relative merits of the parties' positions.

*See Hummell,* 634 F.2d at 453. Grand Union concedes the relevance of these factors. *See* Brief for Plaintiff-Appellant at 32–35.

■ Following the *Hummell* list, we note first, in agreement with the district court, that "the entire circumstances of the action lend the impression that [Grand Union] was trying to evade the statutory dispute resolution procedures of ERISA." D.D.C. Dec. 11, 1985 Order, J.A. at 26. Second, Grand Union does not dispute its ability to satisfy a fee award. Third, as the district court stated, "an award of attorney's fees and costs in this case will have a deterrent effect on employers impatient with ERISA's statutory dispute resolution scheme." *Id.* Fourth, the district court's decision, and our affirmance of it, clarify for the benefit of all involved in multiemployer pension plans that the MPPAA's dispute resolution procedures, most particularly, the requirement of initial recourse to arbitration, may not be circumvented. Finally, Grand Union's positions, as the district court observed, were "dubious." *Id.* The district court, we thus conclude, altogether rationally and fairly exercised its discretion in ordering Grand Union to pay attorney's fees and costs to the Fund and trustees.

CONCLUSION

For the reasons stated, the orders from which this appeal is taken are

*Affirmed.*