TEAMSTERS PENSION TRUST FUND–BOARD OF TRUSTEES OF the WESTERN CONFERENCE, Plaintiff–Appellee,

v.

ALLYN TRANSPORTATION CO., Defendant–Appellant.

BOARD OF TRUSTEES OF the WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST FUND, Plaintiff/Counterdefendants/Appellees,

v.

LANDY CORPORATION, et al., Defendants,

and

Landy Leasing, Inc., a Nevada corporation, Defendant/Counterclaimant/Appellant.

BOARD OF TRUSTEES OF the WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST FUND, Plaintiff/Counterdefendants/Appellees,

v.

LANDY CORPORATION, et al., Defendants,

and

Energy Carriers, Inc., Defendant/Counterclaimant/Appellant.

BOARD OF TRUSTEES OF the WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST FUND, Plaintiff/Counterdefendants/Appellees,

v.

LANDY CORPORATION, Defendant/Counterclaimant/Appellant,

and

Energy Carriers and Landy Leasing, Inc., Defendants.

Nos. 84–6621, 85–6536 to 85–6538.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 1986.

Decided Nov. 13, 1987.

Michael H. Salinsky, San Francisco, Cal., for plaintiff-appellee.

Earl J. Imhoff, Los Angeles, Cal., for defendant-appellant.

Before BROWNING, Chief Judge, GOODWIN and FARRIS, Circuit Judges.

**504**

JAMES R. BROWNING, Chief Judge:

We review and affirm separate judgments against Allyn Transportation Company and the Landy corporations under the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U.S.C. § 1381 *et seq.*

## I

Appellant Allyn, a participating employer in a multiemployer defined benefits pension plan sponsored by appellee Teamsters Pension Trust Fund, laid off 122 of 123 employees covered by the plan, and restricted its covered operations accordingly. Under MPPAA an employer who withdraws from a defined benefits plan must pay the plan a proportionate share of the plan's unfunded vested benefits. 29 U.S.C. § 1381. The Fund determined Allyn's withdrawal liability and sent Allyn a formal notice and demand for payment. 29 U.S.C. § 1382. Allyn requested reconsideration (29 U.S.C. § 1399(b)(2)(A)) claiming a "complete withdrawal" from the plan by Allyn had occurred before MPPAA's effective date and Allyn therefore had no withdrawal liability under the Act. 29 U.S.C. §§ 1383, 1461(e). The Fund rejected Allyn's claim and advised Allyn it had 60 days to initiate arbitration. 29 U.S.C. § 1401(a)(1).[1] Allyn took no action. The Fund sued Allyn to collect the withdrawal liability. 29 U.S.C. § 1451. The district court granted the Fund's motion for summary judgment, holding Allyn's liability as calculated by the Fund was due and owing because Allyn had failed to initiate arbitration within the statutory period. 29 U.S.C. § 1401(b)(1).[2] Allyn's contention in the district court and in this court is that whether a "complete withdrawal," within the meaning of 29 U.S.C. § 1383, occurred before the effective date of MPPAA, is a question for the court, not an arbitrator, to decide: (1) because the question is one of statutory construction—a pure question of law; and (2) because the question is whether Allyn was subject to MPPAA at the critical time and therefore under any duty to arbitrate at all.

### A.

■ We follow the holding of *I.A.M. Nat'l Pension Fund v. Clinton Engines Corp.*, 825 F.2d 415 (D.C.Cir.1987), that questions of statutory interpretation are not excepted from arbitration under MPPAA.[3] The court pointed out that by the express terms of § 1401(a)(1) "[a]ny dispute over withdrawal liability as determined under the enumerated statutory provisions *shall* be arbitrated." *Id.* at 417; *see also id.* at 418, 422, 426. The court noted that arbitration is the initial stage of the dispute resolution process established by the statute, that judicial consideration is to follow, and that it is to take the form of a proceeding "to enforce, vacate or modify the arbitrator's award." *Id.* at 417 (quoting § 1401(b)(2)); *see also id.* at 417 n. 3, 421–22, 426–27. The court noted that Congress was dissatisfied with collection procedures that resulted in "lengthy, costly and complex litigation" (*id.* at 426 n. 20); provisions for informal, expeditious resolution of withdrawal liability disputes were at the heart of the MPPAA (*id.* at 426); and "the value of arbitration in fulfilling Congress' intent to provide an efficient, expeditious dispute resolution mechanism lies in *initial* resort to that mechanism." *Id.* at 427.

---

1. Section 1401(a)(1)(A) states, in relevant part: Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60–day period....

2. Section 1401(b)(1) provides: If no arbitration proceeding has been initiated pursuant to subsection (a) of this section, the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

3. In presenting MPPAA to the House, Rep. Frank Thompson, floor manager of the bill, stated: "The committees intend that the role of the arbitrator under this Act will be similar to that of a judge applying applicable law to the facts presented ..." 26 Cong.Rec. 23,039 (1980).

The court emphasized that exclusion from arbitration of "cases raising questions of statutory interpretation would 'drastically diminish the prime role Congress so plainly assigned to arbitration in the MPPAA dispute resolution scheme.'" *Id.* at 422 (quoting *Grand Union Co. v. Food Employers Labor Relations Ass'n*, 808 F.2d 66, 70 (D.C.Cir.1987)). Such an exclusion would also frustrate Congress' apparent assumption "that a substantial portion of disputes could be promptly and efficiently resolved through informal procedures[,]" and that there would be a more orderly development of the law and a better focused record for judicial review of disputes that remained. *Id.* In addition, exclusion of issues of statutory construction would require a case-by-case determination that would be wasteful of judicial resources, and, since few cases involve "*no disputed facts*," would produce little benefit. *Id.*

In *Clinton Engines*, as in the present case, the employer's argument that issues of statutory construction were not subject to arbitration under MPPAA rested primarily upon the D.C. Circuit's decision in *I.A.M. National Pension Fund v. Stockton TRI Industries*, 727 F.2d 1204 (D.C.Cir. 1984). The opinion in *Clinton Engines* pointed out that *Stockton* had been characterized as "an exceptional case" in the *Grand Union* opinion, and had been limited, in effect, to cases in which the pension fund had waived arbitration of the statutory issues. *Clinton Engines* at 417–18, 424.[4]

### B.

▌ We also reject Allyn's contention that whether Allyn withdrew before the effective date of MPPAA must be decided by the court before arbitration is initiated because the answer to that question determines whether Allyn had any duty to arbitrate at all.

Allyn relies principally upon *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) and *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). These cases involve arbitration clauses in collective bargaining agreements. Whether there is a duty to arbitrate under such an agreement depends upon the intention of the parties and general contract principles, supplemented by national labor policy. *See Wiley*, 376 U.S. at 550–51, 84 S.Ct. at 915. The question is usually submitted to the court rather than the arbitrator because it is regarded as unlikely that parties would agree to leave the question of what matters were arbitrable to the arbitrator. "The willingness of parties to enter into agreements that provide for arbitration of specified disputes would be 'drastically reduced' ... if a labor arbitrator had the 'power to determine his own jurisdiction ...'" *AT & T Technologies*, 106 S.Ct. at 1419–20 (quoting Cox, *Reflections Upon Labor Arbitration*, 72 Harv.L.Rev. 1482, 1509 (1959)). However, if the parties clearly intend to give the arbitrator such power, their intention will be enforced. *Id.* at 1418; *International Bhd. of Teamsters v. Washington Employers, Inc.*, 557 F.2d 1345, 1349 (9th Cir.1977).

In this case, the duty to arbitrate arose not from an agreement of the parties, but from the statute. The matters to be resolved by arbitration are not to be determined by the parties' intention, but by the intention of Congress. As we have seen, the statute states unambiguously that "[a]*ny* dispute between an employer and the

---

**4.** Commentators agree that MPPAA arbitration was intended to include statutory issues. *See* Comment, *MPPAA Withdrawal Liability Assessment: Letting the Fox Guard the Henhouse*, 14 Fordham Urban L.J. 211, 243–44 (1986); Smith & Friedman, *Act Helps Resolve Pension Plan Withdrawal Disputes*, Legal Times, June 20, 1983 at 15, 19–20; Scheinholtz & Miscimarra, *The Arbitrator as Judge and Jury: Another Look at Statutory Law In Arbitration*, 40 Arb.J., June 1985, at 55, 66 ("In arbitrating a plan's determination that an employer is subject to withdrawal liability, the arbitrator must review the legal issues of withdrawal and unfunded liability. These issues, while seemingly factual, are *inherently* statutory. For example, 'withdrawal' is not an event that can be verified with the senses, but a conclusion reached by applying statutory constructs.")

plan sponsor ... concerning a determination made under sections 1381 through 1399 ... shall be resolved through arbitration" (29 U.S.C. § 1401(a)(1)), and Congress clearly intended exactly what those words import.

Several circuits have indicated that disputes as to whether and when an employer has withdrawn from a plan are subject to arbitration under MPPAA. *See Clinton Engines, supra* (whether withdrawal preceded effective date of MPPAA should have been arbitrated); *Warner–Lambert Co., Inc. v. United Retail & Wholesale Employee's Teamsters Local No. 115 Pension Plan,* 791 F.2d 283, 287–88 (3rd Cir. 1986) (upholding referral to arbitration of dispute over whether the employer had withdrawn before the effective date of MPPAA); *Woodward Sand Co. v. Western Conf. of Teamsters,* 789 F.2d 691, 695–96 (9th Cir.1986) (criticizing lower court for not presuming correctness of arbitral finding that employer had not withdrawn until after MPPAA's effective date). In *Shelter Framing Corp. v. Pension Ben. Guar. Corp.,* 705 F.2d 1502, 1509 (9th Cir.1983), *rev'd on other grounds,* 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984), we determined that "the arbitration requirement does not apply where the constitutionality of the statute, not the establishment or amount of withdrawal liability, is at issue." *Id.* Since "the establishment ... of withdrawal liability" is the only issue in this case, *Shelter Framing* suggests, without deciding, that arbitration should be required here.

Allyn points out that section 1401(a)(1) requires arbitration only of disputes "concerning a determination made under sections 1381 through 1399," and argues that the dispute in this case arose out of section 1461(e)(2)(A), which fixes the effective date of the Act. However, it is not the effective date of the Act that is in dispute. The disagreement is over whether Allyn's conduct constituted a "complete withdrawal"

from the pension plan within the meaning of section 1383.

■ Finally, Allyn contends that the Act, interpreted as *Clinton Engines* holds, denies Allyn the fair hearing guaranteed by the due process clause of the Fifth Amendment. The statute afforded Allyn a hearing before an arbitrator and, thereafter, before a court. Allyn was informed of this right, and elected to forego it.

The judgment against Allyn is affirmed.

## II

■ The Fund sued the Landy corporations for the amount of the judgment against Allyn on the ground the Landy corporations and Allyn were under common control within the meaning of 29 U.S.C. § 1301(b)(1), and therefore jointly and severally liable for withdrawal liability.[5] The district court granted summary judgment for the Fund.

Landy argues that entities within a controlled group may not be held responsible in default for the withdrawn employer's liability unless they received a separate, individual notice from the Fund. Admittedly, the Fund gave actual direct notice of withdrawal liability only to Allyn. The Fund responds that notice to any member of a controlled group constitutes notice to all; that Landy received constructive notice when Allyn received actual notice. Since Landy failed to seek arbitration within the statutory time limits, it too is bound.

■ The Third Circuit addressed this question in *IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.,* 788 F.2d 118 (3rd Cir.1986). The court held that "because all trades or businesses under common control 'shall be treated ... as a single employer,' notice to one should be notice to all." *Id.* at 127 (quoting 29 U.S.C. § 1301(b)(1)). Because the other members of the controlled group failed to initiate arbitration, they were liable for the amount

---

**5.** 29 U.S.C. § 1301(b)(1) provides:
For purposes of this subchapter, under regulations prescribed by the [Pension Benefit Guaranty Corporation], all employees of trades or businesses (whether or not incorporated)

which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer.

demanded by the plan from an employer-member of the group. 29 U.S.C. § 1401(b)(1).

The Third Circuit's view is supported by the principle that ERISA as a remedial statute is to be liberally construed. *Smith v. CMTA-IAM Pension Trust,* 746 F.2d 587, 589 (9th Cir.1984). Landy's contrary view " 'would void ... [the controlled group provision] of any significance.' " *Barker & Williamson,* 788 F.2d at 128 (quoting *Connors v. Calvert Development Co.,* 622 F.Supp. 877, 881–82 (D.D.C.1985)).[6]

Congress enacted the controlled group provision "to prevent businesses from shirking their ERISA obligations by fractionalizing operations into many separate entities." *Board of Trustees v. Johnson, Inc.,* 830 F.2d 1009, 1013 (9th Cir.1987); *see also* S.Rep. No. 383, 93rd Cong., 2d Sess. 43, *reprinted in* 1974 U.S.Code Cong. & Admin.News, pp. 4639, 4890, 4928. This purpose is best served by holding that notice to the withdrawing employer is notice to all members of the controlled group for the purposes of 29 U.S.C. § 1399(b)(1).

Landy's suggestion that this result denies procedural due process to members of the controlled group who do not receive individual notice was rejected in *Board of Trustees v. Johnson:* "[T]he requirement of common control in § 1301(b) assures that individuals and entities who may ultimately be held liable for withdrawal liability in fact have notice and an opportunity to contest the existence and extent of that liability." At 1013.

The judgment against the Landy corporations is affirmed.

## III

■ The Fund seeks attorney's fees on appeal pursuant to 29 U.S.C. § 1132(g)(2).

When a pension fund succeeds in a suit to recover delinquent contributions, an award of fees is mandatory. *Woodward Sand,* 789 F.2d at 697–98. The Fund is directed to file its bill of costs under 9th Cir. Rule 39–1.

---

**6.** The Third Circuit explained:

A fund can only be expected to provide notice to the corporation that is the ostensible employer of the fund's participants. A pension fund has no way of knowing the ownership of a closely held corporation, such as B & W and Sentinel. Holding the fund responsible for providing notice to all other possible entities that might subsequently be deemed to be in a controlled group with the employer corporation would place the fund in an untenable position. In contrast, the stockholders and officers of corporations such as Sentinel and B & W certainly are aware of their holdings. If they choose to ignore Sentinel's potential liability as a member of a controlled group under MPPAA, then they should suffer the consequences if that issue is subsequently determined adversely to them. *Barker & Williamson,* 788 F.2d at 128.