**Joan EDDY, Executrix of the Estate of James Peter Eddy, Appellant,**

v.

**COLONIAL LIFE INSURANCE COMPANY OF AMERICA, Appellee.**

No. 94–7043.

United States Court of Appeals, District of Columbia Circuit.

Argued March 2, 1995.

Decided July 7, 1995.

Rehearing and Suggestion for Rehearing In Banc Denied Sept. 12, 1995.*

* Randolph, Circuit Judge, would grant the petition for rehearing.

Patricia A. Smith argued the cause and filed the briefs for appellant.

Elizabeth J. Haegelin argued the cause for appellee. With her on the brief was Frank J. Martell.

Before WALD, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the court filed by Circuit Judge ROGERS.

Dissenting opinion filed by Circuit Judge RANDOLPH.

ROGERS, Circuit Judge:

Appellant's decedent, James Peter Eddy, sued the Colonial Life Insurance Company of America, Inc., for violating its fiduciary duty under the Employee Retirement Income Security Act ("ERISA") with respect to his group health and life insurance plans. Eddy alleged that he had sought information from Colonial Life about the possibility of extending his coverage after his employer terminated the plans, and that Colonial Life had erroneously informed him that an extension of coverage was not possible. After a two-day bench trial, the district court entered judgment for Colonial Life. This court reversed because the district court had applied too narrow a view of Colonial Life's fiduciary duties, which include the "duty upon inquiry to convey to a lay beneficiary like Eddy correct and complete material information about his status and options when a group policy is cancelled." *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747, 750 (D.C.Cir.1990) (*"Eddy I"*). Upon remand, the district court

ruled in appellant's favor,[1] retroactively reinstating Eddy's health insurance policy and awarding appellant the proceeds of the life insurance policy and medical costs (less premiums due). The district court referred appellant's request for attorneys' fees to a magistrate judge, who applied the five-factor analysis of *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir.1980), and determined that appellant should not be awarded attorneys fees. *Eddy v. Colonial Life Ins. Co.*, 844 F.Supp. 790, 795 (D.D.C.1994). The district court adopted the magistrate judge's report and recommendation, thus denying the motion for fees. *Id.* at 792.

Appellant appeals from the denial of attorneys' fees on the grounds that the district court erred as a matter of law in adopting the *Hummell* standard and, alternatively, abused its discretion in applying the *Hummell* factors. We hold that the district court adopted the correct approach, weighing the factors relevant to an award of attorneys' fees without presuming that an award to the prevailing plaintiff is appropriate absent exceptional circumstances. We thus endorse the approach to ERISA attorneys' fees awards in *Hummell*, rather than import to ERISA the test in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), for awarding such fees under civil rights statutes. However, upon examination of the district court's evaluation of the *Hummell* factors, we conclude that a remand is required.

## I.

■ ERISA provides that "[i]n any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The district court's decision whether to grant attorneys' fees is reviewed only for abuse of discretion. *E.g., Mullins v. Kaiser Steel Corp.*, 642 F.2d 1302,

1320 (D.C.Cir.1980). Neither the statute nor the legislative history indicates whether or how that discretion should be guided.[2] In *Grand Union Co. v. Food Employers Labor Relations Ass'n*, 808 F.2d 66, 71 (D.C.Cir. 1987), the court acknowledged that the award of ERISA attorneys' fees could be governed by either the "less demanding" standard of *Hensley*, 461 U.S. at 429, 103 S.Ct. at 1937, which presumes that attorneys' fees should be awarded absent exceptional circumstances, or the "more exacting" standard of *Hummell*, 634 F.2d 446, which requires consideration of five factors relating to attorneys' fees without a presumption that such fees should be awarded. *See also T.I.M.E.-DC, Inc. v. I.A.M. National Pension Fund*, 616 F.Supp. 400, 403 (D.D.C.1985). Heretofore it has been unnecessary for the court to choose between the standards because the outcome on appeal would not have been affected. *Grand Union*, 808 F.2d at 71–72; *T.I.M.E.-DC, Inc.*, 616 F.Supp. at 403. In the instant case we must choose.

At the outset, we join every circuit in concluding that it is appropriate to provide guidance to the district court in exercising its discretion to award attorneys' fees under ERISA. Such guidance ensures that the district court considers relevant factors, thereby providing a measure of uniformity, and enables meaningful appellate review. Nothing suggests that in vesting discretion in the district court, Congress intended that there would be no standards to guide the exercise of that discretion. To the contrary, Congress has enacted many statutes vesting discretion in the courts to award attorneys' fees,[3] and for some of these statutes, the courts have developed factors to guide the exercise of discretion. *E.g., Tax Analysts v. United States Dept. of Justice*, 965 F.2d 1092, 1093–94 (D.C.Cir.1992) (attorneys' fees under the Freedom of Information Act ("FOIA")); *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir.1986) (Copyright Act,

---

1. James Peter Eddy died before his appeal was argued in *Eddy I*. His mother, Joan Eddy, the executrix of his estate, continues the litigation. *Eddy I*, 919 F.2d at 750.

2. *See* Mark Howard Berlind, Note, *Attorney's Fees under ERISA: When is an Award Appropri-*

*ate?*, 71 Cornell L.Rev. 1037, 1042, 1049 (1986) ("*ERISA Note*").

3. *See, e.g.,* Jeffrey R. Goldstein, Attorney's Fees: Winning a Recovery in Federal Court (1985) (listing and summarizing statutes). *See generally* Alba Conte, Attorney Fees Awards (2d ed. 1993).

17 U.S.C. § 505). Thus, when Congress enacted ERISA, it was aware of the judicial practice of adopting factors to guide the exercise of discretion. *See Cannon v. University of Chicago,* 441 U.S. 677, 696–98, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979); *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 869–70, 55 L.Ed.2d 40 (1978); *see also* H.R.CONF.REP. No. 1380, 93d Cong., 2d Sess. 9–10 (1974). The Supreme Court recently validated the practice of using "several nonexclusive factors" in determining whether to award attorneys' fees so long as the factors are faithful to the statutory purpose. *See Fogerty v. Fantasy, Inc.,* — U.S. —, — n. 19, 114 S.Ct. 1023, 1033 n. 19, 127 L.Ed.2d 455 (1994) (fee award under Copyright Act). The question remains which approach to guiding the district courts' discretion best comports with ERISA and its purposes.

**The *Hensley* Standard: Analogy to Civil Rights Statutes.** In the civil rights context, where the statutes vest district courts with discretion to award attorneys' fees, the Supreme Court has recognized a presumption that successful plaintiffs should be awarded attorneys' fees absent special circumstances. *See Hensley v. Eckerhart,* 461 U.S. at 429, 103 S.Ct. at 1937 (construing 42 U.S.C. § 1988). Appellant contends that the court should award her attorneys' fees by analogy to fee shifting in the civil rights context, as the Eighth Circuit did in *Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344, 1356 (8th Cir.1980). She further maintains that all successful ERISA actions, like civil rights actions, vindicate important national policies and that a presumptive award of attorneys' fees is necessary to create the proper incentives to pursue such litigation. Although we agree that ERISA lawsuits vindicate important interests, we are unpersuaded that these interests justify the presumptive award of fees.

The Supreme Court validated the presumptive award of attorneys' fees to prevailing plaintiffs when it construed Title II of the Civil Rights Act, 42 U.S.C. § 2000a–3(b), in *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). The Court deemed the presumption appropriate because a plaintiff in a Title II action acts as a " 'private attorney general,' vindicating a policy that Congress considered of the highest priority." *Piggie Park,* 390 U.S. at 402, 88 S.Ct. at 966. Subsequently, the Court extended this rationale to other civil rights attorneys' fees provisions. *Northcross v. Board of Educ.,* 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973) (Emergency School Aid Act, 20 U.S.C. § 1617); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 415, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975) (Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–5(k)); *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978) (same). More recent cases, including *Hensley,* provide for the presumptive award of attorneys' fees to prevailing plaintiffs in light of legislative history unequivocally endorsing such a presumption. *Hensley,* 461 U.S. at 429, 433 n. 7, 103 S.Ct. at 1937, 1939 n. 7 (citing legislative history that Congress intended the same standards to apply to award of attorneys' fees under 42 U.S.C. § 1988 as under Title II as construed by *Piggie Park* ); *Donnell v. United States,* 682 F.2d 240, 245 (D.C.Cir.1982) (same, attorneys' fees under the Voting Rights Act, 42 U.S.C. § 1973l(e)).

■ Although the discretionary language in the fee-shifting provisions in these civil rights statutes [4] is similar to that in ERISA's attorneys' fees provision, *see* 29 U.S.C. § 1132(g)(1), there are crucial differences. The interests furthered by ERISA differ substantially from those furthered by the civil rights statutes.[5] *See Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1265 (5th Cir.1980). Civil rights are constitutionally based; ERISA rights are statutory. In addition, ERISA protects economic interests, while the civil rights statutes advance dignitary as well as economic interests. *Compare* S.REP. No. 872, 88th Cong., 2d Sess., pt. 1, at

---

4. *See* 42 U.S.C. §§ 1973l(e), 1988, 2000a–3(b), 2000e–5(k).

5. Although ERISA contains an anti-discrimination clause, 29 U.S.C. § 1140, ERISA is not an anti-discrimination statute, and the clause alone does not confer on ERISA the status of a civil rights statute. *See Iron Workers,* 624 F.2d at 1266 n. 12.

11 (1964), 1964 U.S.C.C.A.N. 2355, 2365 (noting economic cost of discrimination and its damage to "national unity and self-respect") *and* H.R.REP. No. 914, 88th Cong., 1st Sess., pt. 2, at 1 (1963), 1964 U.S.C.C.A.N. 2487 ("No legislation of greater significance to the Nation has come before this Congress in our lifetime....") *with* H.R.REP. No. 533, 93d Cong., 1st Sess. 1 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4639 (primary purpose of ERISA is to protect pension rights) *and* S.REP. No. 127, 93d Cong., 1st Sess. 1 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4838, 4838 (same). In general, statutes protecting economic interests that contain fee-shifting provisions vesting discretion in the district court do not create a presumption that a prevailing party will be awarded fees. *See Fogerty,* —— U.S. at ——–—— n. 12, 114 S.Ct. at 1028–29 n. 12; *ERISA Note,* 71 CORNELL L.REV. at 1050–51.

Furthermore, the presumption favoring fee-shifting in civil rights cases reflects the unique importance of the enforcement of these statutes to the nation as a whole, as well as to their direct beneficiaries. *See Christiansburg,* 434 U.S. at 418, 98 S.Ct. at 698–99; *Piggie Park,* 390 U.S. at 402, 88 S.Ct. at 966. The fact that ERISA is a "remedial" statute, *see, e.g., Rettig v. Pension Ben. Guar. Corp.,* 744 F.2d 133, 155 (D.C.Cir.1984), is by itself insufficient, in our view, to warrant the analogy to the civil rights statutes for the purposes of awarding attorneys' fees. Were any successful plaintiff suing under a remedial statute presumptively entitled to statutorily authorized discretionary attorneys' fees, Congress' grant of discretion and the unique rationale for the decisions in *Hensley* and *Piggie Park* would be virtually meaningless. *See Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587,

591 (9th Cir.1984) (Wallace, J., concurring); *Armistead v. Vernitron Corp.,* 944 F.2d 1287, 1303 (6th Cir.1991); *see also Jordan v. United States Dep't of Justice,* 591 F.2d 753, 780 (D.C.Cir.1978) (FOIA). *But see Landro,* 625 F.2d at 1356.

Finally, the *Hensley* presumption derives not solely from the language of the civil rights statutes, but from the legislative history, which indicates congressional intent to constrain the district court's discretion to award fees. *See Hensley,* 461 U.S. at 429, 103 S.Ct. at 1937; *see also Donnell,* 682 F.2d at 245; *cf. Fogerty,* —— U.S. at ——, 114 S.Ct. at 1028 (absence of legislative history on standard for fee-shifting under the Copyright Act militates against adopting standard from civil rights statutes). ERISA's legislative history lacks any indication that Congress intended to create a presumption in favor of awarding fees to prevailing plaintiffs. *See* H.R.CONF.REP. No. 1280, 93d Cong., 2d Sess. 327, *reprinted in* 1974 U.S.C.C.A.N. 5038, 5107; H.R.REP. No. 533, 93d Cong., 1st Sess. 21 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4659; S.REP. No. 383, 93d Cong., 1st Sess. 106 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4890, 4989.

■ For these reasons, some circuits have explicitly rejected an analogy between fee-shifting under ERISA and the civil rights statutes,[6] while other circuits have implicitly declined to adopt the *Hensley* presumption.[7] Only the Eighth Circuit has accepted the analogy for the purpose of establishing a standard to guide the exercise of discretion in awarding attorneys' fees, based on ERISA's remedial nature. *Landro,* 625 F.2d at 1356. We join those circuits which have concluded that the special reasons for adopting a fee-shifting presumption in civil rights

6. *See Iron Workers,* 624 F.2d at 1265–66 (5th Cir.) (declining to adopt the *Hensley* presumption because ERISA protects less important interests and the need for the incentive created by such a presumption is lower); *Ellison v. Shenango Inc. Pension Bd.,* 956 F.2d 1268, 1274–75 (3d Cir. 1992) (same); *Armistead,* 944 F.2d at 1301–04 (6th Cir.) (declining to apply the *Hensley* presumption because ERISA suits are often private feuds lacking the public importance of a civil rights suit); *Gray v. New England Tel. & Tel. Co.,* 792 F.2d 251, 259 (1st Cir.1986); *Bittner v. Sadoff & Rudoy Indus.,* 728 F.2d 820, 829 (7th

Cir.1984) (rejecting the analogy because of the absence of legislative history regarding ERISA and different status of plaintiffs under the two statutes).

7. *See Quesinberry v. Life Ins. Co.,* 987 F.2d 1017, 1030 (4th Cir.1993) (*in banc*); *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 871 (2d Cir.1987); *Nachwalter v. Christie,* 805 F.2d 956, 961 (11th Cir.1986); *Gordon v. United States Steel Corp.,* 724 F.2d 106, 108 (10th Cir.1983); *Hummell,* 634 F.2d at 453 (9th Cir.).

actions do not warrant adopting the presumption in ERISA cases. Neither ERISA's language nor its legislative history imply the presumption, and fee-shifting is less necessary as an incentive in ERISA, not because ERISA protects unimportant interests, but because the interests it protects are monetary, rather than dignitary.[8]

■ **The *Hummell* factors.** Following an approach initially developed by the Tenth and Fifth Circuits,[9] the Ninth Circuit in *Hummell* adopted five factors as guidelines for the district court in deciding whether to award attorneys' fees under ERISA. 634 F.2d at 453. A majority of the circuits have since followed suit.[10] As articulated in this circuit in *Grand Union*, the five *Hummell* factors are:

(1) the losing party's culpability or bad faith; (2) the losing party's ability to satisfy a fee award; (3) the deterrent effect of such an award; (4) the value of the victory to plan participants and beneficiaries, and the significance of the legal issue involved; and (5) the relative merits of the parties' positions.

808 F.2d at 72 (citations omitted).

The *Hummell* factors, correctly applied, confront the "nuclei of concerns" relevant to ERISA lawsuits, *Iron Workers*, 624 F.2d at 1266, and implement the statute's underlying purposes. The factors are neither exclusive nor quantitative, thereby affording leeway to the district courts to evaluate and augment them on a case-by-case basis. *Freeman v. Continental Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir.1993); *Quesinberry v. Life Ins. Co.*, 987 F.2d 1017, 1029 (4th Cir.1993) (*in banc*); *Iron Workers*, 624 F.2d at 1266. While a particular application of the *Hummell* factors may be subject to criticism, the factors are reasonable and have been widely accepted by the courts. The factors provide appropriate guidance to the district courts in evaluating fee requests under 29 U.S.C. § 1132(g)(1) and enable meaningful appellate review. We therefore conclude that the *Hummell* approach, as articulated in *Grand Union*, 808 F.2d at 72, is the most suitable approach to guide the exercise of discretion in awarding fees under ERISA.

The Ninth Circuit, in *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir.1984), in effect adopted the *Hensley* presumption while applying the *Hummell* factors, holding that the district court had abused its discretion in denying attorneys fees by not focusing on ERISA's remedial purpose. Appellant urges this court to adopt the same evaluation of the *Hummell* standards, which would require special circumstances to deny fees to a prevailing plaintiff. To the extent that *Smith* imported the *Hensley* presumption into the ERISA context, we

---

**8.** In *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 829–30 (7th Cir.1984), the Seventh Circuit also rejected the analogy to the civil rights fee-shifting provisions and instead analogized ERISA's fee-shifting provision to a fee-shifting provision in the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A) (prevailing party entitled to attorneys' fees unless the "position of the United States was substantially justified or … special circumstances make an award unjust."). Neither party in the instant appeal advocates the *Bittner* approach. Nor are we persuaded by the analogy. Unlike ERISA, the EAJA specifically sets forth its fee-shifting standard. In addition, the EAJA presumption is linked to the United States' status as a party in all EAJA actions. *See* 5 U.S.C. § 504 note; *Gray*, 792 F.2d at 259; *see also* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 9–11, *reprinted in* 1980 U.S.C.C.A.N. 4984, 4988–89. Moreover, the Seventh Circuit had earlier adopted the *Hummell* factors, and its more recent opinions indicate that it expects the result to be the same regardless of whether the *Bittner* approach or the *Hummell* factors are used. *Hooper v. Demco, Inc.*, 37 F.3d 287, 294 (7th Cir.1994); *Tesch v. General Motors Corp.*, 937 F.2d 359, 363 (7th Cir.1991); *Meredith v. Navistar Int'l Transp. Co.*, 935 F.2d 124, 128 (7th Cir.1991); *Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 698 (7th Cir.1991); *cf. Davidson v. Canteen Corp.*, 957 F.2d 1404, 1409–10 & n. 11 (7th Cir.1992) (noting that *Bittner* applied the EAJA standard to ERISA awards of attorneys' fees but applying the *Hummell* factors instead).

**9.** *See Eaves v. Penn*, 587 F.2d 453, 464, 465 (10th Cir.1978); *Iron Workers*, 624 F.2d at 1266 (5th Cir.).

**10.** *Gray v. New England Tel. & Tel. Co.*, 792 F.2d 251, 258 (1st Cir.1986); *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir.1987); *McPherson v. Employees' Pension Plan*, 33 F.3d 253, 254 (3d Cir.1994); *Quesinberry v. Life Ins. Co.*, 987 F.2d 1017, 1029 (4th Cir.1993) (*in banc*); *Armistead v. Vernitron Corp.*, 944 F.2d at 1303–04 (6th Cir.); *Nachwalter v. Christie*, 805 F.2d 956, 961 (11th Cir.1986).

have stated our concerns: ERISA's language and legislative history are inconsistent with such a constraint on the district court's discretion. To the extent that *Smith* merely applies the *Hummell* factors in light of ERISA's remedial purpose, we view the approach to be quite similar to that adopted in many circuits, and the one we adopt here.

Any guide for the exercise of discretion functions within a statutory context. ERISA explicitly states its purposes: "to protect interstate commerce, the Federal taxing power, *and* the interests of the *participants* in private pension plans and their *beneficiaries.*" 29 U.S.C. § 1001(c) (emphasis added); *accord id.* § 1001(a), (b). ERISA's remedial focus assumes significance because, as the courts have recognized, it informs and channels the application and evaluation of the *Hummell* factors. *See Quesinberry,* 987 F.2d at 1030; *Chambless v. Masters, Mates & Pilots Pension Plan,* 815 F.2d 869, 872 (2d Cir.1987); *Nachwalter v. Christie,* 805 F.2d 956, 962 (11th Cir.1986); *cf. Rettig,* 744 F.2d at 155 n. 54; *Gray v. New England Tel. & Tel.,* 792 F.2d 251, 258–59 (1st Cir.1986). In adopting the *Hummell* approach, we necessarily seek to focus decision-making on the underlying statutory purpose while affording appropriate leeway for the district court's case-by-case determinations. Without the statutory purpose as a constant guide, however, application of the factors can become mechanical, undermining both the substantive purpose of ERISA and the discretion vested in the courts to carry out that purpose.

## II.

Accordingly, we turn to appellant's alternative contention that the district court abused its discretion in applying the *Hummell* factors by failing to give appropriate weight to ERISA's remedial purpose. Appellant takes issue with the district court's evaluation of several factors. An examination of the district court's evaluation of the *Hummell* factors here indicates, as appellant perceived, that the district court interpreted the third (deterrence) factor too narrowly; the court also accorded inadequate consideration to the fourth (common benefit) factor and partially misconstrued the first (bad faith or culpability) factor.

■ Given ERISA's remedial purpose, the third *Hummell* factor—whether an award of fees would deter misconduct by ERISA fiduciaries—may prove decisive in an otherwise close case.[11] When applying this factor, the district court must consider whether the award of fees will likely deter not only similar future ERISA violations but also delayed or otherwise inadequate detection and resolution of such violations. The broad nature of the *Hummell* deterrence factor arises from the statutory purpose to protect the interests of plan participants and their beneficiaries, 29 U.S.C. § 1001, and is reflected in the decisions in other circuits. *See Rodriguez v. MEBA Pension Trust,* 956 F.2d 468, 472 (4th Cir.1992) (where ERISA violation stemmed from an initial mistake followed by conduct constituting a breach of fiduciary duty, the award of attorneys' fees against the fiduciary will have a deterrent effect); *National Cos. Health Benefit Plan v. St. Joseph's Hosp.,* 929 F.2d 1558, 1575–76 (11th Cir.1991) (deterrence factor includes fostering appropriate behavior in defending and settling a lawsuit); *see also Rivera v. Benefit Trust Life Ins. Co.,* 921 F.2d 692, 698 (7th Cir.1991) (award of attorneys' fees justified in part by losing defendants' refusal to alter their litigation position even after the conclusion of discovery).[12] The importance of vindicating ERISA's purpose is not diminished when relatively small amounts of money are at stake.[13] *Chambless,* 815 F.2d at 872.

---

**11.** *See* Alan P. Woodruff, *Attorney Fees under ERISA,* 67 Fᴌᴀ.B.J. July/Aug. 1993, at 24, 27 (deterrent effect appears to be the most important).

**12.** At the same time, appellant's contention, that awarding attorneys' fees will always have a deterrent effect because doing so increases the penalty for non-compliance, is too expansive; it would be unreasonable to consider a factor that inevitably points the same way in every case. *See Armistead,* 944 F.2d at 1304 (requiring some reason for additional deterrence beyond that which will be present in every case).

**13.** Eddy sought to recover $5,260.99 from Colonial Life in health insurance benefits (less any premiums due).

The magistrate judge concluded that awarding appellant attorneys' fees would have no deterrent effect because *Eddy I* merely "articulated more explicitly the already well-established scope of an insurance company's fiduciary duty to one of its insured." 844 F.Supp. at 794. The district court concurred in the magistrate judge's evaluation and considered Eddy's victory to be its own reward: "[T]he plaintiff's victory on the merits is sufficient deterrence for insurers and ERISA trustees in similar cases. The prospect of a fee award provides no significant extra deterrence." *Id.* at 792. Focusing only on Colonial Life's contention that it was already aware of its duty and took appropriate steps to fulfill that duty does not constitute the evaluation of the deterrence factor that is required.

■ Colonial Life maintains that the award of fees would not result in any incremental deterrence because prior to Eddy's lawsuit it had instituted procedures to ensure ERISA compliance and its violation of ERISA's requirements with respect to Eddy was an anomaly. That Colonial Life's procedures may adequately, albeit not flawlessly, safeguard against violations of ERISA does not exhaust the deterrence inquiry, however.[14] Because ERISA is designed to protect the interests of plan participants and their beneficiaries, the deterrent purpose of awarding attorneys' fees extends not only to deterring violations of ERISA but also to deterring unnecessary prolongation or unjust resolution of ERISA claims. *Cf.* 29 U.S.C. § 1001(b) (purpose of ERISA includes the provision of "appropriate remedies, sanctions, and ready access to the Federal courts"). Although ensuring access to the courts may not be a critical factor in the instant case, deterring the continuing injury that results when an insurer persists in its denial of ERISA rights is critical here.

■ At trial, the dispositive factual issue, ultimately resolved in Eddy's favor, was whether the telephone conversation between a Colonial Life supervisor and Eddy actually took place. Colonial Life denied that the conversation occurred, primarily because it had no record of the telephone call and Eddy claimed that he spoke with a male supervisor, although all of the supervisors who would have answered his telephone call were female. Yet Colonial Life admitted that there were two male supervisors in its office, that it did not determine whether they had spoken with Eddy, and that it kept only partial records, which might not reflect the alleged conversion.

Even if keeping better records of such conversations or conducting more thorough internal investigations would not help prevent violations of ERISA in the first instance, such steps would assist in the resolution of similar future disputes over ERISA compliance. In the absence of attorneys' fees awards to wronged plan participants and their beneficiaries, insurers and plan carriers will have less incentive to improve procedures to detect (as well as prevent) mistakes. *Cf. T.I.M.E.–DC, Inc.,* 616 F.Supp. at 404. By awarding attorneys' fees, the courts make both delay and litigation less likely, thereby encouraging earlier resolution of claims and the information-gathering to facilitate their resolution. Thus, even if Colonial Life could not have taken any other steps to prevent its violation of Eddy's ERISA rights, and therefore cannot be deterred from repeating the violation, it can take steps to assure more rapid detection and admission of such mistakes in the future, furthering the purposes of ERISA by increasing the rapidity and ease with which participants and their beneficiaries receive entitled plan benefits.

Consequently, the district court could not properly view the instant case as one in which an award of fees could have "no significant extra deterrence." Nor is this a case in which an award will not have a deterrent effect because the facts are unique, *see Custer v. Pan Am. Life Ins. Co.,* 12 F.3d 410, 423 (4th Cir.1993); *Freeman,* 996 F.2d at 1120–21, or the only policy complained of was

---

14. The district court made no findings regarding the efficacy of Colonial Life's procedures to comply with ERISA. Although one witness described Colonial Life's procedures in a way that suggested compliance with ERISA, the court did not decide in *Eddy I* whether the described practice was that of the witness alone or all of Colonial Life's employees; nor did or could the court evaluate the witness' credibility. *See Eddy I,* 919 F.2d at 752 & n. 4.

changed before the lawsuit was instituted, *McPherson,* 33 F.3d at 256, or a change in law has precluded a deterrent effect. *Tiemeyer v. Community Mut. Ins. Co.,* 8 F.3d 1094, 1102 (6th Cir.1993). Rather, in evaluating the *Hummell* deterrence factor, the district court appears to have considered appellant's fee request in light of the aberrant violation of Colonial Life's preexisting policies without also considering whether an award of fees would further the purposes of ERISA by creating an incentive for Colonial Life and other ERISA plan carriers to keep better records of contacts with participants and, should a similar situation arise, to investigate and promptly resolve the claim. Accordingly, in view of the incorrect evaluation of the deterrence factor, a remand is required. *See Ellison,* 956 F.2d at 1278.

■ The district court's evaluation of the fourth factor—common benefit—is also flawed. The magistrate judge observed that Eddy "did not seek to benefit others in pursuing his claim" and "has not shown that there are any others who will benefit because of this litigation." 844 F.Supp. at 794. While the district court concurred in the magistrate judge's evaluation, benefit-to-others is an objective factor, and the subjective intent of the plaintiff in filing suit is irrelevant. *Reinking v. Philadelphia Am. Life Ins. Co.,* 910 F.2d 1210, 1219 (4th Cir.1990); *Chambless,* 815 F.2d at 872. In addition, the district court agreed that Eddy's lawsuit did not provide a common benefit because this court described the fiduciary duty in *Eddy I* as "not a novel one" but "well-rooted in the common law of trusts." 844 F.Supp. at 792, 794 (*citing Eddy I,* 919 F.2d at 751, 752). However, in rejecting the narrowly defined fiduciary duty under ERISA urged by Colonial Life and adopted by the district court, *Eddy I* has benefitted other plan beneficiaries by providing a clear statement of the law in this circuit and by making the law clear to Colonial Life itself. *See Groves v. Modified Retirement Plan,* 803 F.2d 109, 119–20 (3rd Cir.1986); *see also Smith,* 746 F.2d at 590; *cf. Grand Union Co. v. Food Employers*

*Labor Relations Ass'n,* 1985 WL 6072 at *5– *6 (D.D.C. December 11, 1985) (observing that the value of victory to participants and beneficiaries is significant because it affirms ERISA provisions and deters future lawsuits), *aff'd,* 808 F.2d 66 (D.C.Cir.1987).

*Eddy I*'s recognition that a "well-rooted" fiduciary duty exists under ERISA, and its holding that an ERISA fiduciary must affirmatively convey complete and correct material information on status and conversion options even in the absence of a precisely phrased inquiry, 919 F.2d at 752, provides protection for plan participants and their beneficiaries in accordance with ERISA's purposes. *Eddy I* has been widely followed.[15] Put otherwise, *Eddy I* did not hinge on a mere factual dispute about a telephone call, but addressed a generally applicable legal question important in advancing ERISA's remedial purposes. It thus conferred a common benefit by making it less likely that plan participants in Eddy's predicament will have to litigate their claims and easier for them if they or their beneficiaries do. So understood, the district court should reconsider whether it gave sufficient weight to the significance of *Eddy I*'s contribution to the common benefit.

■ Finally, because we are remanding the case, the district court should also take into account the distinction between the first and fifth factors. The first factor—bad faith or culpability—is distinct from the fifth factor and focuses not on the relative merits of the parties' legal arguments and factual contentions, but on the nature of the offending party's conduct. *See McPherson v. Employees' Pension Plan,* 33 F.3d 253, 256–57 (3rd Cir.1994); *Grand Union,* 808 F.2d at 72; *T.I.M.E.–DC, Inc.,* 616 F.Supp. at 404. The magistrate judge's evaluation of the first factor emphasized the legal merit of Colonial Life's position that it had not violated its fiduciary duty. 844 F.Supp. at 792, 793–94. Although a party's litigation posture may affect the evaluation of the first factor, *see,*

---

**15.** *E.g., Bixler v. Central Pa. Teamsters Health & Welfare Fund,* 12 F.3d 1292, 1300–01 (3d Cir. 1993); *Anweiler v. American Elec. Power Serv. Corp.,* 3 F.3d 986, 991 (7th Cir.1993); *Drennan v.*

*General Motors Corp.,* 977 F.2d 246, 251 (6th Cir.1992): *Acosta v. Pacific Enters.,* 950 F.2d 611, 619 (9th Cir.1992).

*e.g., Grand Union,* 808 F.2d at 72, the relative merits of the parties' litigation positions constitutes the fifth factor and should not be confused with the first factor. Based on the record before the court, it appears that, notwithstanding appellant's contention that Colonial Life's breach of a well-established duty warrants a finding of bad faith, a district court evaluating the first factor could reasonably conclude that there was no evidence of bad faith; Colonial Life had implemented a procedure to prevent the type of miscommunication that occurred, *see Eddy I,* 919 F.2d at 752 (miscommunication with Eddy was an "inexplicable omission" by Colonial Life), and there is no evidence of intentional or reckless conduct by Colonial Life's agents. *Cf. Liu v. Republic of China,* 892 F.2d 1419, 1430 (9th Cir.1989); *Sandlin v. Iron Workers Dist. Council Pension Plan,* 716 F.Supp. 571, 574 (N.D.Ala.1988). On remand the district court should reconsider the first factor, ensuring that its evaluation reflects only Colonial Life's relevant conduct and not the relative merits of the parties' contentions during the litigation, which *Eddy I* resolved in appellant's favor. *See Reinking,* 910 F.2d at 1219.

Accordingly, we remand the case to the district court for reconsideration of the *Hummell* factors.

RANDOLPH, Circuit Judge, dissenting:

Without specifying any standards, 29 U.S.C. § 1132(g)(1) vests "discretion" in the district courts to award attorney's fees in ERISA cases: "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." To this exceedingly general provision, a provision like many other federal fee-shifting statutes, my colleagues now attach the five-factor "test" composed in *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir.1980). The *Hummell* test, we are told, is "exacting" but "neither exclusive nor quantitative" (maj. op. at 203, 206), which means there may be other, unidentified factors lurking about, and that the factors already on the *Hummell* list carry no particular weight.

For the purpose of guiding discretion the majority has thus adopted what, in Chief Judge Posner's words, is "the essential condition for standardless, discretionary judgment: a multi-factor test with no weights on the factors." *Short v. Belleville Shoe Mfg. Co.,* 908 F.2d 1385, 1394 (7th Cir.1990) (concurring opinion). One might suppose that the majority's engrafting a standardless formula onto a standardless statute in the interests of precision and "uniformity" (maj. op. at 203) is nothing more than a harmless exercise in delusion. But a bit more is involved. Multifactor tests of the *Hummell* variety may be easily manipulated. Whatever is done with *Hummell,* it is still the district courts, not the courts of appeals, who are supposed to be making the discretionary judgments. The majority sees things differently. Using *Hummell* to bestow discretion on itself, the majority manifests its desire to give ERISA plaintiffs attorney's fees and then all but instructs the district court to make an award to the plaintiff in this case.

Consider the majority's handling of deterrence, number 3 on the *Hummell* list and, so the majority supposes, "critical" despite its lack of any particular weight. Maj. op. at 208. What exactly is it that is getting deterred? Insurance companies know they had better explain to insureds that group policies about to expire can be converted into individual policies. Colonial was well aware of this long before the merits decision in this case (*Eddy v. Colonial Life Ins. Co. of Am.,* 919 F.2d 747 (D.C.Cir.1990)). Insurance companies also know that if they do not explain, they may be hit with medical expenses incurred at a time when the insured's policy had expired, at a time in other words when they were not collecting premiums. There is thus every reason for insurers to give the right advice and no reason why they would not do so. Colonial Life was already following the correct practice, which is why the original panel found it "inexplicable" that Eddy got the wrong advice. *Eddy,* 919 F.2d at 752. In any event, adding attorney's fees cannot appreciably alter the deterrence calculus and the district court rightly recognized as much: "[T]he plaintiff's victory on the merits is sufficient deterrence for insurers and ERISA trustees in similar cases. The prospect of a fee award provides no

significant extra deterrence." *Eddy v. Colonial Life Ins. Co. of Am.*, 844 F.Supp. 790, 792 (D.D.C.1994).

One would have thought that the district court's judgment on this matter was well within the range of its discretion. Not so. The majority sends the case back because the district court supposedly did not pay enough attention to something called "deterring the continuing injury that results when an insurer persists in its denial of ERISA rights," (maj. op. at 208). "Continuing injury"? Eddy did not suffer any physical harm at the hands of Colonial Life. Eddy said he had received misleading advice, despite the company's routine practice of informing those who were about to lose their group insurance coverage of their option to convert to an individual policy. Colonial put on a strong case that Eddy had not been misled. The majority's so-called "continuing injury" thus must be Colonial's defending against an ultimately successful claim the company had good reason to believe was not well-founded.

In effect, then, the majority has wielded the *Hummell* test to create the sort of presumption in favor of prevailing plaintiffs the Supreme Court rejected in *Fogerty v. Fantasy, Inc.*, —— U.S. ——, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). If awards of attorney's fees follow plaintiffs' victories, one might say—as my colleagues do—that this will deter defendants from defending lawsuits. But what of prevailing defendants? Like the fee-shifting statute in *Fogerty*, § 1132(g)(1) is supposed to be neutral with respect to parties. "Prevailing plaintiffs and prevailing defendants," the Supreme Court held, "are to be treated alike." —— U.S. at ——, 114 S.Ct. at 1033. Not according to the majority opinion in this case. The majority thinks awards of attorney's fees should be used to deter denials of "ERISA rights." Under that skewed vision, no prevailing defendant will ever get any *Hummell* points—whenever the defendant wins, it follows that no ERISA rights have been denied and thus no deterrence is needed.

The majority's other *Hummell* factors are just as tilted in favor of plaintiffs. The courts must consider the "losing party's ability to satisfy a fee award," *Grand Union Co.*

*v. Food Employers Labor Relations Ass'n*, 808 F.2d 66, 72 (D.C.Cir.1987). Maj. op. at 206. In the typical ERISA suit between a corporate defendant and an individual plaintiff, it is easy to see how this one will come out. *Hummell* number 4 is in the same vein—"the value of the victory to the plan participants and beneficiaries," *Grand Union*, 808 F.2d at 72. Once again, if Colonial had won, it would have garnered no points under this heading. My colleagues chide the district court for misunderstanding factor 4. The panel's original decision, they say, conferred a benefit by "providing a clear statement of the law of this circuit and making the law clear to Colonial Life itself," (maj. op. at 209). This is demonstrably incorrect. The original case turned, as I have said, entirely on a factual dispute: Eddy claimed he had been misled; Colonial denied having misled him. The panel's statement of "the law" merely repeated what Colonial already knew to be its obligation; indeed, the panel relied on the company's existing practice, a practice the panel described as one "fully comport[ing]" with Colonial's "fiduciary duty under ERISA," 919 F.2d at 752. The panel's decision, clear as it may have been, did not change the law and it did not change Colonial's method of conducting business. Where then is the benefit to anyone other than the plaintiff? Here again, the majority's result may be explained only on the basis that, despite the Supreme Court's ruling in *Fogerty*, it is presuming *sub silentio* that prevailing plaintiffs should get attorney's fee awards in ERISA cases.

Congress sometimes enacts statutes empowering agencies to promulgate "appropriate" standards and take certain factors "into account." We routinely hold that this sort of legislation confers quite "broad" discretion, requiring only that the agency consider the factors in whatever structure it sees fit. *Small Refiner Lead Phase–Down Task Force v. EPA*, 705 F.2d 506, 515–16 (D.C.Cir. 1983); *Weyerhaeuser Co. v. Costle*, 590 F.2d 1011, 1046 (D.C.Cir.1978). I see no principled reason why district courts should not be accorded the same respect when they administer § 1132(g)(1). The district court in this case went down the list, evaluated the consid-

**212**

erations bearing on attorney's fees and concluded that Eddy would not be given an award. Nothing was overlooked. The court's decision should have been affirmed. The majority, however, remands the case because it disagrees about what may be, in the end, largely imponderables. Instead of giving deference, it usurps the district court's discretion. And instead of applying § 1132(g)(1) in a neutral fashion, as the district courts must, it tilts decidedly in favor of the plaintiffs' side of these controversies.