Beth **COLSEY**, Robert **Hammond**, Gilbert **Shott** & Timothy **O'Hanlin**, Plaintiffs,

v.

**DELAWARE CHARTER GUARANTEE & TRUST COMPANY** and Prudential Securities Incorporated.

**PRUDENTIAL SECURITIES INCORPORATED**, Defendant and Third–Party Plaintiff,

v.

Louis **BONAVENIA**, William A. **Brown**, Richard **Folchetti** and Richard **Savarese**, Third–Party Defendants.

**No. 94 CV 7240 (BDP).**

United States District Court, S.D. New York.

Dec. 27, 1995.

William M. Simon, Hunter, NY, for Plaintiffs.

Steven J. Mandelsberg, Hahn & Hessen, New York City, for Defendant.

Theodore A. Krebsbach, Kittay Gold & Krebsbach, White Plains, NY, for Defendant Prudential.

David B. Bath, Duane Morris & Heckscher, Wilmington, DE, for Defendant Delaware.

Thomas J. Kelly, Mignano & Associates, Peekskill, NY, for Third–Party Defendant Folchetti.

William and Lorraiane Brown, Brewster, NY, Pro Se.

Louis Bonavenia, Dover Plains, NY, Pro Se.

Edmund G. Fitzgerald Jr., Angelo & Fitzgerald, Bronxville, NY, for Defendant Savarese.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

The action underlying this motion for attorney fees was brought pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et. seq., to recover duplicate payments to beneficiaries of Clearwater Excavating Corp.'s ("Clearwater") Profit Sharing Plan (the "Plan"). The Plan was created and administered by one of the plaintiffs, Gilbert Shott. As Plan Administrator, Shott was required to file with the I.R.S., among other things, the Plan's annual accounting report or Series 5500 reports. See 29 U.S.C. § 1023. The Plan Administrator was also responsible for preparing summary annual reports and distributing them to beneficiaries each year. See 29 U.S.C. § 1024.

Beginning in 1985 and continuing until 1991, the Plan Administrator requested Defendant Delaware Charter, for a yearly fee, to prepare the 5500's and the annual summary report for the Plan. Delaware Charter prepared the Series 5500 reports and summary annual reports and submitted them to Mr. Shott for his review and approval for each of these years. Clearwater, however, did not request Delaware Charter to prepare such documents for the years ending 1992, 1993 and 1994. For reasons that are not apparent on the record, Clearwater did not prepare these reports on its own.

Beginning in mid–1993, Clearwater attempted to terminate the Plan. In order to terminate the Plan, Clearwater and Shott were required to provide Delaware Charter with information sufficient for Delaware Charter to identify the beneficiaries and make appropriate distributions to them. During this period, however, Clearwater failed to provide the information necessary to determine final distributions. In order to make these distributions, a written directive from Clearwater to Delaware Charter was required. Delaware Charter would, in turn, provide the custodian of the trust assets, in this case, the Defendant Prudential Securities Inc. ("Prudential") with necessary distribution information. This much is undisput-

ed. What next happened is subject to minor dispute.

Delaware Charter claims that Clearwater forwarded incomplete and inconsistent distribution requests between September 1993 and January 1994. Clearwater claims this error originated with Delaware Charter. As a result, a number of improper duplicate payments were made to plan beneficiaries in 1993. These payments totaled approximately $172,700.

Delaware Charter and Prudential pursued the duplicate payments. About the time this lawsuit was commenced, all but approximately $30,306 in erroneous payments had been recovered. After the commencement of the lawsuit, Prudential cross-claimed against Delaware Charter and also impleaded the four third-party defendants who were the remaining distributees who had not returned duplicate payments. The defendants contend that these recipients should have been sued by plaintiffs in the first instance.

Along with the other parties, the four individual distributees appeared at settlement conferences before the Court in February and in June 1995 and indicated in substance that they would return the funds once they had received assurances as to the precise amount of their pension interests and received protection from any adverse tax consequences as a result of the inadvertent duplicate distributions. The case was finally settled in July, 1995 with plaintiffs' counsel reserving the right to make an appropriate fee applications to the Court.

■ ERISA, 29 U.S.C. § 1132(g)(1), provides the Court with discretion to allow either party to recover a reasonable attorney's fee and costs of an action. To determine whether fees and costs are to be awarded, the following five factors apply:

1. The degree of the offending party's culpability/bad faith;

2. The offending party's ability to pay an award of fees;

3. Whether an award of fees would have a deterrent effect on others in similar circumstances;

4. Whether the action benefited all plan participants or the action was brought to resolve a significant legal question regarding ERISA; and

5. The relative merits of the parties' positions. See *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir.1987); *New York State Teamsters Council Health and Hospital Fund v. The Estate of DePerno*, 816 F.Supp. 138, 152 (N.D.N.Y. 1993); *Eddy v. Colonial Life Insurance Company of America*, 59 F.3d 201 (D.C.Cir. 1995).

■ Having reviewed plaintiffs' application for attorneys fees, the motion is denied in all respects. Application of the first step in the test—relatively culpability—requires identification of the "culpable party." Prudential is not shown to have committed any wrong doing. As far as the record shows, it followed instructions and distributed checks to plan participants pursuant to the instructions that it was given. Delaware Charter and Shott dispute responsibility for duplicate instructions. Shott had an obligation to provide proper instructions and Delaware Charter had an obligation not to make improper payments. Shott's failure to provide accurate distribution information was a significant part of the reason why the incorrect payments were made to the third-party defendants and why all of the money was not returned earlier. Accepting Shott's claims that Delaware Charter also erred, the fact remains that since Shott was also substantially culpable, he enjoys no discernable advantage under the first factor.

The next factor is the offending parties ability to pay. Here Shott received the lion's share of the recovery—more than $115,000. Thus, requiring him to shoulder the cost of rectifying a mistake that he played a role in creating is not inequitable.

In addition, an award of fees against Delaware Charter or Prudential would have no appreciable deterrent effect on others. As previously noted, it is not demonstrated on the record that Prudential did anything wrong. Trustees such as Delaware Charter are entitled to accurate distribution information from Plan Administrators. While Delaware Charter could be faulted for making

payments in the absence of clear instructions, the symmetry of the statute and the deterrent effects of an award of fees would be undermined if the party at fault for not providing proper information could, thru shifting fees, shift responsibility to others.

The next relevant factor is whether the lawsuit benefited the plan participants. Most of the money in question was returned, but not as a result of this lawsuit. While it was clear that the four named plaintiffs were ultimately made whole, within the contours of this litigation, that benefit was not sufficiently substantial to justify invocation of ERISA's fee shifting provisions.

Each of the third-party defendants agreed to return the incorrect distributions, asking only for correct information and protection against tax penalties. The matter was resolved rather quickly and efficiently, with the efforts of all counsel. Considering all these factors, attorney's fees properly lie where incurred.

Further, plaintiffs' counsel not only represented Mr. Shott, but other unpaid plan participants as well. The joint representation of the Plan Administrator as well as the other three plaintiffs may have complicated the resolution of the case, since their interests appear to be adverse.

Plaintiffs' counsel represents that he has a retainer agreement with the plaintiffs to compensate him in the event fees are denied by the Court. Plaintiffs' counsel is free to collect fees from Shott pursuant to the terms of any appropriate arrangement he has with Mr. Shott. He may not, however, collect any fees in this action from the other three plaintiffs unless he files with this Court within ten days of this Opinion, an affidavit from plaintiffs' counsel and each plaintiff satisfactorily demonstrating that no conflict of interest exists in this action.

**SO ORDERED.**