UMWA 1992 BENEFIT PLAN and its Trustees, and the UMWA Combined Benefit Fund and its Trustees, Plaintiffs,

v.

LECKIE SMOKELESS COAL COMPANY, New River Mineral Resources Company, and Gould Resources, Inc., Defendants.

Civil Action No. 5:96–0092.

United States District Court, S.D. West Virginia.

April 16, 1996.

Ellen S. Cappellanti, Jackson & Kelly, Charleston, WV, Stephen L. Thompson, Barth, Thompson & George, Charleston, WV, for debtors.

Larry D. Newsome, Barbara E. Locklin–George, UMWA Health & Retirement Funds, Office of the General Counsel, Washington, DC, Susan Cannon–Ryan, Caldwell, Cannon–Ryan & Riffee, Charleston, WV, Marilyn L. Baker, Beins, Axelrod, Osborne, Mooney & Green, Washington, DC, Katherine Butler Houlihan, Morgan, Lewis & Bockius, LLP, Washington, DC, for movants United Mine Workers of America 1992 Benefit Plan, United Mine Workers of America Combined Benefit Fund.

John Hankins, Huntington, WV, for interested party Unsecured Creditors Committee.

William M. Herlihy, Spilman, Thomas, Battle & Klostermeyer, Charleston, WV, Ethan D. Fogel, Dechert Price & Rhoads, Philadelphia, PA, for interested party Royal Scot Minerals, Inc.

### MEMORANDUM OPINION AND ORDER

HALLANAN, District Judge.

This matter is before the Court via Objection of the UMWA Combined Fund and 1992 Benefit Plan to Debtors' Motion to Approve Bidding and Auction Procedures and to Approve Option and Asset Purchase Agreement and Assumption and Assignment of Executory Contracts and Leases ("Plaintiffs' Objection").

Defendants' Joint Motion for Entry of an Order Approving Bidding and Auction Procedures and an Order Approving Auction and Asset Purchase Agreement and Assumption and Assignment of Executory Contracts and Leases ("Motion to Sell") is currently pending before the United States Bankruptcy Court for the Southern District of West Virginia. By Order entered March 13, 1996 this Court withdrew reference of Plaintiffs' Objections pursuant to 28 U.S.C. § 157(d) and by Order of March 26, 1996 directed the parties to brief the issue of the effect of a free and clear order under 11 U.S.C. § 363(f) on successor liability under the Coal Industry Retiree Health Benefit Act of 1992 ("the Coal Act"), 26 U.S.C. § 9701, et seq.

In response to the Court's May 26, 1996 Order and briefing schedule, Plaintiffs submitted Plaintiff Coal Act Funds' Brief Supporting Objection to Leckie's Sale Motion ("Plaintiffs' Brief"), and Defendants submitted a Memorandum of Debtors Leckie Smokeless Coal Company, New River Mineral Resources Company and Gould Resources, Inc. in Response to the Objection of UMWA 1992 Benefit Plan and UMWA Combined Benefit Fund to Debtors' Motion to Approve Bidding and Auction Procedures, and to Approve Option and Asset Purchase Agreement and Assumption and Assignment of Executory Contracts and Leases ("Defendants' Brief"). Plaintiffs also submitted Plaintiff Coal Act Funds' Response Brief, Supporting Objection to Sale ("Plaintiffs' Response"), and Defendants simultaneously submitted a Reply Memorandum of Debtors Leckie Smokeless Coal Company, New River Mineral Resources Company and Gould Resources, Inc. in Reply to Plaintiff's [sic] Coal Act Funds' Brief Supporting Objection to Leckie Smokeless Coal Company's Sale Motion ("Defendants' Response") which Royal Scot Minerals, Inc., the prospective buyer in the sale pending before the Bankruptcy Court, joined. Having carefully considered said briefs and responses and the exhibits attached thereto the Court is now prepared to rule upon Plaintiffs' Objection.

### I. Facts

#### A. Leckie, Gould and New River

Defendant Leckie Smokeless Coal ("Leckie"), in business since 1919, operated two

deep mines and one surface mine in Rupert, West Virginia. Defendants New River Mineral Resources ("New River") and Gould Resources, Inc. ("Gould") are affiliates of Leckie's. Their primary assets are leases of coal lands adjacent to Leckie's property. Neither Gould nor New River has engaged employees to mine coal, although Gould has periodically hired contract miners. (Motion to Sell, ¶ 7.)

### B. The Funds

Plaintiffs are the Trustees of the UMWA 1992 Benefit Plan ("the 1992 Plan") and the Trustees of the UMWA Combined Benefit Fund ("the Combined Fund") (collectively "the Funds"). The Funds were created pursuant to the Coal Act which was signed into law on October 24, 1992 as subtitle C to the Energy Policy Act of 1992, in the form of amendments to the Internal Revenue Code and the Surface Mining Act, Pub.L. No. 102–486. The Coal Act was enacted in response to a crisis in the coal industry over retirees' health benefits. Prior to the Coal Act, collectively bargained multiemployer benefit plans provided health care benefits to most retired miners. However, as coal companies went out of business and more coal industry employees retired, these employees were dumped into the existing multiemployer benefit plans whose contributors were diminishing, creating an escalating burden on the plans which lacked adequate mechanisms to ensure continuing employer contributions.

The Coal Act became effective February 1, 1993. It created the Combined Fund to cover beneficiaries eligible for and receiving retiree health benefits under the UMWA's former 1974 and 1950 Benefit Plans. 26 U.S.C. §§ 9702(a), 9703(f). Those retirees who are not eligible for the Combined Fund receive benefits directly from their last employer who was a signatory to the National Bituminous Coal Wage Agreement ("NBCWA") or "last signatory employer." 26 U.S.C. § 9711(a)–(b). The 1992 Plan covers those retirees not eligible for the Combined Fund and who are not receiving benefits directly from their last signatory employer. 26 U.S.C. § 9712(b).

To finance the Combined Fund, the Coal Act imposes on "assigned operators" and their related persons under 26 U.S.C. § 9704(a) statutory obligations to contribute monthly per beneficiary premiums. Pursuant to 26 U.S.C. § 9706, the Secretary of Health and Human Services sets the number of beneficiaries assigned to each operator and their related persons. The monthly per beneficiary premium is set according to a formula prescribed pursuant to 26 U.S.C. § 9704(b)(2). It is currently $183.38 per beneficiary per month. (Exhibit 1 to Plaintiffs' Brief ("Exhibit 1"), p. 2.)

The 1992 Plan is also funded by per beneficiary premiums, based on a rate set by the 1992 Plan's Trustees. 26 U.S.C. §§ 9712(d)(1)(B), (d)(2)(A). The Trustees for the 1992 Plan determine each beneficiary's last signatory employer defined as the "operator which was the most recent coal industry employer of such retiree." 26 U.S.C. § 9712(d)(1)(B). The Trustees then adjust the beneficiary count and premiums for each assigned operator and their related persons on a monthly basis dependant on the number of eligible beneficiaries attributable to each employer. The basic premium rate is recalculated annually based on the costs of health care. The current per beneficiary premium for the 1992 Plan is $235. (Exhibit 1, p. 2.)

There are 140 beneficiaries assigned to Defendants under the Combined Fund and 87 beneficiaries attributable to Defendants as their last signatory employer under the 1992 Plan. (Exhibit 1, pp. 1–2.) Thus, there are 227 beneficiaries for whom Defendants are responsible for paying per beneficiary premiums to the Funds under the Coal Act. In the instant bankruptcy case, Plaintiffs have filed Proofs of Claim for a total of $1,414,-211.24 for delinquent contributions and premiums for pension and benefits due under the Coal Act, the NBCWA and ERISA. (Exhibit F to Defendants' Brief ("Exhibit F").) Defendants assert that their "total Coal Act liability will easily exceed $7,000,-000." (Defendants' Brief, p. 8.)

### C. History of these Proceedings

#### 1. Bankruptcy

All three defendants have filed voluntary petitions for bankruptcy under Chapter 11 of

the Bankruptcy Code. On April 16, 1993 Leckie filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. New River filed under Chapter 11 on November 13, 1995 and Gould followed shortly thereafter, filing its voluntary petition for bankruptcy under Chapter 11 on November 17, 1995. When Leckie filed for bankruptcy, its assets consisted of mining equipment, mining permits, an operational preparation plant, leasehold interests and 2,000 acres of land. (Defendants' Brief, p. 3.) At that time Leckie had over 150 employees. Leckie kept up its payments to the Funds until January of 1994 when it ceased active mining operations and terminated most of its employees. Shortly after Leckie ceased mining there was a fire at its preparation plant, rendering the plant inoperable. (Defendants' Brief, pp. 3–4.)

For the past two years Joseph C. Turley, III, President of the three defendants, has been attempting to sell Defendants' assets pursuant to 11 U.S.C. §§ 363 and 365. Royal Scot Minerals, Inc. (the Buyer), an entity unrelated to Defendants (Motion to Sell, ¶ 20), has offered to purchase Defendants' assets for approximately $1.9 million ($1.5 million for Leckie's property, $272,500 for New River's property and $156,750 for Gould's property). (Motion to Sell, ¶ 11.) Defendants seek to have the Bankruptcy Court approve an Option and Purchase Agreement among the Buyer and Defendants. (Exhibit A to Motion to Sell.) The Bankruptcy Court entered an Interim Order Approving Bidding and Auction Procedures and Scheduling Order Setting Forth Notice Requirements for Hearing on Debtors' Joint Motion Seeking Approval of Option and Asset Purchase Agreement. Plaintiffs filed the instant Objection to Defendants' Motion to Sell. Because Plaintiffs' Objection required consideration of non-bankruptcy law, namely the Coal Act, withdrawal of reference of Plaintiffs' Objection was mandatory pursuant to 28 U.S.C. § 157(d). Following this Court's ruling on Plaintiffs' Objection, the Bankruptcy Court will conduct a confirmation hearing on Defendants' Motion to Sell.

### 2. Defendants' Motion to Sell

Debtors and Buyer require as a condition of the sale under the Option Agreement that the order approving the Option Agreement provide that the Buyer is not assuming nor shall it in any way as a successor or otherwise, be liable for any liabilities, debts or obligations of the Debtors or any liabilities, debts or obligations in any way whatsoever relating to or arising from the Debtors' ownership or operation of the Property prior to closing or any liabilities calculable by reference to the Debtors or their assets or operations, or relating to continuing conditions existing on or prior to closing, which liabilities, debts, obligations shall be extinguished insofar as they may give rise to successor liability, without regard to whether the claimant asserting any such liabilities, debts or obligations has deliver to the Buyer a release thereof. Without limiting the generality of the foregoing, it is also a condition of the sale that the order provide that the Buyer shall not be liable or responsible, as a successor or otherwise, for the Debtors liabilities, debts or obligations, whether calculable by reference to the Debtors or its operations, or under or in connection with ... (ii) any ... employee benefit plans ... [or] (v) ... claims arising under ... the Coal Industry Retiree Health Benefit Act of 1992....

(Motion to Sell, ¶ 13.)

The Debtors and Buyer further require as a condition of sale that the Property transferred under the Option Agreement shall be conveyed to the Buyer free and clear of any and all claims, liens, pledges, offsets, set-offs, recoupments, charges and successor, product, environmental, tax and other liabilities .... and that all rights of lienholders holding valid, enforceable and perfected liens shall attach to the proceeds generated from sale of the Property.

(*Id.* at ¶ 14.)

Thus, Defendants seek "this Court's approval of an ... Option Agreement ... under which substantially all of the assets of Leckie, New River, and Gould would be approved for sale free and clear of successor

liability under the ... Coal Act." (Plaintiffs' Objection, pp. 1–2.)

### 3. Objection

Plaintiffs' Objection to Defendants' Motion to Sell addresses the issue of the Buyer's successor liability for obligations imposed under the Coal Act. As Plaintiffs frame the issue, "the Court must determine whether, in approving a sale of assets under section 363(f) of the Bankruptcy Code, a bankruptcy court has the authority to extinguish any further liability a purchaser might otherwise have as a successor under the Coal Industry Retiree Health Benefit Act of 1992 ("Coal Act"), 26 U.S.C. § 9701, *et seq.*" (Plaintiffs' Brief, pp. 1–2.)

Plaintiffs contend that a purchaser of assets, even a purchaser out of bankruptcy, is liable for a debtor's obligations under the Coal Act as a successor. (Plaintiffs' Brief, pp. 14–18.) Plaintiffs also contend that a "free and clear" order under § 363(f) of the Bankruptcy Code cannot insulate the Buyer from Coal Act liability because Plaintiffs' interest in this matter is not an "interest in property" as required by § 363(f) (*Id.* at pp. 22–23) or a "claim" (Plaintiff's Response, pp. 3–10), that under § 524(e) of the Bankruptcy Code, discharge of a debtor does not affect the liability of any other entity on such a debt (Plaintiffs' Brief at pp. 24–26), and, finally, that the relief requested by Defendants is in violation of § 9722 of the Coal Act because its principle purpose is an impermissible effort to avoid liability under that Act. (*Id.* at pp. 27–28.)

Defendants argue that under the Coal Act, the Buyer in this case "is not and cannot be a 'successor in interest' and thus, will not be liable to the Funds for Leckie's liability." (Defendants' Brief, p. 9.) Alternatively, Defendants argue that "if the Court determines that the Funds have an interest which attaches to the Debtors' assets, the Funds' objection must be overruled because the Bankruptcy Code permits the Debtors to sell their assets free and clear of such interests and claims." (*Id.*) Defendants also argue that § 524(e) of the Bankruptcy Code dealing with discharge of a debtor is irrelevant to this action because under the proposed sale Defendants will not receive a discharge. Rather their obligations will be payable from the sale proceeds. (*Id.* at p. 26.) Finally, Defendants argue that under the applicable case law, the proposed sale is not a "sham transaction" under § 9722 of the Coal Act because its principle purpose is not to avoid or evade liability under the Act. (*Id.* at pp. 26–28.)

### II. Applicable Law

#### A. The Coal Act

The term "signatory operator" means a person which is or was a signatory to a coal wage agreement.

26 U.S.C. § 9701(c)(1).

> A person shall be considered to be a related person to a signatory operator if that person is—
>
> (i) a member of a controlled group of corporations ... which includes a signatory operator;
>
> (ii) a trade or business which is under the common control ... which such a signatory operator; or
>
> (iii) any other person who is identified as having a partnership interest or joint venture with a signatory operator in a business within the coal industry, but only if such business employed eligible beneficiaries, except that this clause shall not apply to a person whose only interest is as a limited partner.
>
> *A related person shall also include a **successor in interest** of any person described in clause (i), (ii), or (iii).*

26 U.S.C. § 9701(c)(2)(A) (emphasis added).

> The term "assigned operator" means, with respect to an eligible beneficiary defined in section 9703(f), the signatory operator to which liability under subchapter B with respect to the beneficiary is assigned under section 9706.

26 U.S.C. § 9701(c)(5).

> Each assigned operator shall pay to the Combined Funds for each plan year beginning on or after February 1, 1993, an annual premium.... Any related person with respect to an assigned operator shall be jointly and severally liable for any pre-

mium required to be paid by such operator.

26 U.S.C. § 9704(a).

If a person becomes a *successor* of an assigned operator after the enactment date, the assigned operator *may* transfer the assignment of an eligible beneficiary under subsection (a) to such successor, and such successor shall be treated as the assigned operator with respect to such beneficiary for purposes of this chapter. Notwithstanding the preceding sentence, the assigned operator transferring such assignment (and any related person) shall remain the guarantor of benefits provided to the eligible beneficiary under this chapter.

26 U.S.C. § 9706(b)(2) (emphasis added).

For the purposes of this part and part II—

(1) Successor.—The term "last signatory operator" shall include a *successor in interest* of such operator.

(2) Reassignment upon purchase.—If a person becomes a *successor* of a last signatory operator after the enactment date, the last signatory operator *may* transfer any liability of such operator under this chapter with respect to an eligible beneficiary to such successor, and such successor shall be treated as the last signatory operator with respect to such eligible beneficiary for purposes of this chapter. Notwithstanding the preceding sentence, the last signatory operator transferring such assignment (and any related person) shall remain the guarantor of the benefits provided to the eligible beneficiary under this chapter.

26 U.S.C. § 9711(g) (emphasis added).

A 1988 last signatory operator or last signatory operator described in paragraph (3), and any related person to such an operator, shall be jointly and severally liable with such operator for any amount required to be paid by such operator under this section.

26 U.S.C. § 9712(d)(4).

If a principal purpose of any transaction is to evade or avoid liability under this chapter, this chapter shall be applied (and such liability shall be imposed) without regard to such transaction.

26 U.S.C. § 9722.

### B. The Bankruptcy Code

"[C]laim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured....

11 U.S.C. § 101(5).

The court may issue any order, process, or judgment that is necessary and appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to implement court order or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in property of the entity other than the estate, only if—

(1) applicable, non-bankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which the property is to be sold is greater than the aggregate value of such interest;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

11 U.S.C. § 524(e).

### C. Internal Revenue Regulations

*Successor-in-interest.* The term "successor-in-interest" means an acquiring corporation that succeeds to the tax attributes of

an acquired corporation by means of a transaction subject to section 381.

26 C.F.R. § 1.1503–2(c)(12).

[T]he term successor in interest refers to—

(1) Any corporation that acquires the assets of the distributing or controlled corporation (or a successor in interest) in a transaction in section 381(a) to which this paragraph (c)(3)(vi) applies;

(2) Any corporation that acquires the stock or securities of the distributing or controlled corporation (or a successor in interest) in a transaction to which this paragraph (c)(3)(vi) applies;

(3) Any corporation whose stock or securities are exchanged for the stock or securities of the distributing or controlled corporation (or a successor in interest) in a transaction described in section 351, 354 or 356 to which this paragraph (c)(3)(vi) applies.

26 C.F.R. 1.367(e)(1)(c)(3)(vi)(B). 26 U.S.C. § 381 addresses carryovers in certain corporate acquisitions, namely tax-free reorganizations and liquidations. In such acquisitions, a corporation acquiring the assets of another corporation succeeds to the tax attributes of the latter corporation. 26 U.S.C. §§ 351, 354 and 356 also address situations in which a corporation acquires the assets of a selling corporation in a tax-free exchange and the purchaser takes on a carryover, not a fair market, basis. Thus, "successor in interest" under these sections of the Internal Revenue Code refers to a purchaser of assets who inherits the tax attributes of the seller.

### III. Discussion

#### A. Royal Scot is Not a "Successor in Interest"

 As Plaintiffs correctly state, "[t]he Court cannot eliminate potential future successor liability." (Plaintiffs' Brief, p. 15.) The Coal Act provides that successors are jointly and severally liable for the obligation to provide coal industry retirees with health care. 26 U.S.C. §§ 9701(c)(2), 9704(a), 9711(c), 9711(g), 9712(d)(4). However, Plaintiffs' corollary to this proposition is faulty. Plaintiffs state that, given joint and several successor liability and "the relief sought [by Defendants], the Court need not consider whether the purchaser is a successor or not." (Plaintiffs' Brief, pp. 15–16.) What is sought by Defendants is to relieve the Buyer of Defendants' Coal Act obligations. The only way the Buyer can be so relieved is if the Buyer is not determined to be a "successor" under the Coal Act. Therefore, the Court *must* consider whether the Buyer is a successor.

Additionally, the Court agrees with Defendants that a distinction must be drawn between "successor" and "successor in interest" and that Plaintiffs erroneously use the two terms interchangeably. What is precisely at issue in this matter is whether the Buyer, a purchaser of assets in bankruptcy, is a "successor in interest" to Defendants' Coal Act obligations[1].

"The term 'last signatory operator' shall include a *successor in interest* of such operator." 26 U.S.C. 9711(g) (emphasis added). "A related person shall also include a *successor in interest . . . .*" 26 U.S.C. § 9701(c)(2)(A) (emphasis added). An "assigned operator" is the signatory operator to which liability with respect to Coal Act benefits attaches. 26 U.S.C. §.9701(c)(5). "Any related person with respect to an assigned operator shall be jointly and severally liable for any premium required to be paid by such operator." 26 U.S.C. § 9704(a). Similarly, under 26 U.S.C. § 9712(d)(4), "[a] last signatory operator and any related person to such an operator, are jointly and severally liable with such operator for any amount required to be paid by such operator under this section."

---

1. A "successor" is one who voluntarily assumes a transfer of Coal Act beneficiaries and obligations. 26 U.S.C. § 9706(b)(2) ("the assigned operator *may* transfer the assignment of an eligible beneficiary under subsection (a) to such successor"); 26 U.S.C. § 9711(g)(2) ("If a person becomes a successor of a last signatory operator after the enactment date, the last signatory operator *may* transfer any liability of such operator under this chapter with respect to an eligible beneficiary to such successor"). The Buyer in this case cannot be a "successor" since its purchase is contingent upon *not* assuming transfer of Coal Act beneficiaries and obligations.

■ Thus, only if the Buyer is a related person or "successor in interest" to Defendants will the Buyer be required to assume Defendants' Coal Act obligations. Obligations to pay premiums to the Coal Act Funds are in the nature of taxes. *LTV Co. v. Shalala (In re Chateaugay)*, 53 F.3d 478, 486 (2d Cir.1995). Furthermore, the Coal Act is part of the Internal Revenue Code and the term "successor in interest" is used elsewhere in the Internal Revenue Code. The Court will give the term meaning consistent with the rest of the body of law in which it is found. *C.I.R. v. Keystone Consol. Industries, Inc.*, 508 U.S. 152, 157, 113 S.Ct. 2006, 2011, 124 L.Ed.2d 71 (1993) (citations omitted) ("the [Internal Revenue] Code must be given 'as great an internal symmetry and consistency as its words permit.'")

■ In the legislative regulations to the Internal Revenue Code, which have the force and effect of law, "successor-in-interest" means an acquiring corporation in a tax-free exchange in which the acquiring corporation succeeds to the tax attributes of a selling corporation. 26 C.F.R. § 1.1503–2(c)(12). Purchasers of assets in bankruptcy do not necessarily succeed to the tax attributes of the seller. For example, purchasers of assets in bankruptcy do not take assets on a carryover basis for tax purposes but take on a fair market basis. Therefore, purchasers of assets in bankruptcy cannot be "successors in interest" because, as that term is defined in the Internal Revenue Code, they do not inherit the tax attributes of their predecessors. In this case, because Buyer is purchasing Defendants' assets in bankruptcy, Buyer cannot be a "successor in interest" to Defendants as that term is used in the Coal Act. Therefore, no successor liability attaches to Buyer unless Buyer voluntarily assumes the same as a successor as that term is used in the Coal Act.[2]

**B. The Bankruptcy Court Can Authorize a Sale Free and Clear of an Interest or Claim**

■ Defendants argue in the alternative that, even if the Court were to find, which it does not, that Coal Act liability attaches to assets in an arms length purchase in bankruptcy by the terms of the Coal Act, the Bankruptcy Court can authorize the instant purchase between Defendants and the Buyer to occur free and clear of liens, claims, encumbrances and interests. (Defendants' Brief, p. 17.)

■ A creditor has an "interest in the property" of a debtor when he has a right to seek a future money payment from the debtor. *WBQ Partnership v. Va. Dept. of Medical Assistance Services*, 189 B.R. 97, 105 (Bankr.E.D.Va.1995). Absent a "free and clear" order, Plaintiffs would have a statutory right to future premium payments from Defendants even if the Buyer purchases Defendants' assets free from any liability by the Buyer, and so the Court finds Plaintiffs have an "interest in property."[3] Thus, their right to future premium payments is subject to § 363(f) which authorizes the Bankruptcy Court to allow a sale free and clear of an "interest in property."[4]

---

**2.** *See supra* note 1.

**3.** Plaintiffs draw the Court's attention to the distinction between the Coal Act obligations to pay premiums and the obligations to provide benefits. (Plaintiffs' Response, p. 4, n. 4.) As an "interest in property" is a right to seek future money payment, Plaintiffs' "interest in property" cannot include Defendants' obligation to provide benefits, which is, as Plaintiffs state, " 'unequivocal,' even in bankruptcy." (*Id.*, citing *In re Sunnyside Coal*, bench op. attached as Exhibit A to Plaintiffs' Response, pp. 17–18.) Thus, under § 363(f), the Bankruptcy Court cannot issue an order permitting a sale "free and clear" of Defendants' obligation to provide benefits under the Coal Act.

**4.** The Court finds that Defendants have successfully distinguished *Michigan Employment Security Commission v. Wolverine Radio Co.*, 930 F.2d 1132 (6th Cir.1991), cited by Plaintiffs in support of their argument that Defendants assets cannot be sold free and clear of Coal Act liability. In *Wolverine Radio* the court determined that the debtor's experience rating survived a sale in bankruptcy. Unlike in *Wolverine Radio* where the experience rating was not a debt and its survival of the bankruptcy sale was only contemplated after the sale, these parties clearly contemplate selling free and clear of Coal Act liability which is a debt. Additionally, although not dispositive since the Court found that the Buyer was not a "successor in interest" to Defendants, in *Wolverine Radio* tax liability only arose when the successor employed workers post-petition, whereas Coal Act liability attaches to certain

■ Plaintiffs' alternative argument that their right to premium payments under the Coal Act is not a "claim" is also without merit. Plaintiffs believe that Coal Act obligations which have not accrued or been assessed against Defendant are not "claims" of Defendants' bankruptcy estates because they are not affected by bankruptcy but are incurred periodically, are not yet accelerated and are not contingent. (Plaintiffs' Response, pp. 3–10.)

■ 11 U.S.C. § 101(5)(A) defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...." The Court finds that Congress' intent in giving such a broad meaning to the word "claim" in bankruptcy was to ensure that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." H.R.Rep. No. 595 95th Cong., 1st Sess. 309 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6266; S.Rep. No. 989, 95th Cong., 2d Sess. 22, reprinted in 1978 U.S.C.C.A.N. 5787, 5808. In United States v. LTV Corp. (In re Chateaugay), 944 F.2d 997 (2d Cir.1991), the issue before the court was whether CERCLA response costs for pre-petition releases of pollution were claims in the bankruptcy proceeding. The court cited to the above-quoted legislative history of § 101(5) of the Bankruptcy Code, stating, "[b]y this broadest possible definition ... the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." Id. at 1003 (citations omitted).

While the court reexamined its holding in United States v. LTV in a more recent case involving the same debtor and its Coal Act obligations, noting that the definition of a "claim" is not infinite, the Second Circuit held that, at a minimum, a claim means a "right to payment." LTV v. Shalala, 53 F.3d at 496–97. In LTV v. Shalala the debtor filed for bankruptcy before the Coal Act was enacted, and therefore, Coal Act liability was not found to be a "claim" in bankruptcy

because there "was no legal relationship defined at the time of the petition." Id. at 497.

In the present case, Defendants are liable for past and future Coal Act premiums due to Plaintiffs even though future premiums have not yet accrued and are not fixed in their amount. Payment is contingent upon the number of surviving retirees under each of the Funds. Plaintiffs have a right to payment of those premiums as they accrue and, therefore, Plaintiffs hold an unliquidated claim, contingent, at least in part, for Coal Act premiums. The Bankruptcy Court can estimate contingent claims pursuant to 11 U.S.C. § 502(c). Thus, under the broad definition of "claim" as it is defined in 11 U.S.C. § 101(5)(A), Defendants' liability for premiums is in the nature of a "claim" as well as being Plaintiffs' "interest in property."

■ The Court finds that as such, Plaintiffs' right to payment of future premiums could be accelerated and channeled to the proceeds of the sale. Contra LTV v. Shalala, 53 F.3d at 496–98 (rejecting the idea of accelerating Coal Act obligations). Plaintiff's right to payment of past Coal Act premiums will, of course, be channeled to proceeds of the sale. The Bankruptcy Court has the authority to do so under 11 U.S.C. § 105(a) which is the source of the Bankruptcy Court's equitable power to "issue any order, process, or judgment that is necessary and appropriate to carry out the provisions of this title."

Additionally, it is significant to note that there is nothing in the Bankruptcy Code expressly limiting the definition of "claim" to preclude future liabilities such as those due to Plaintiffs under the Coal Act. Likewise, there is nothing in the Coal Act explicitly stating that liabilities under that statute remain unaffected by bankruptcy.

■ Having found that Defendants' Coal Act obligations to pay premiums are Plaintiffs' "interests in property," by the conditions of § 363(f)(1), the Bankruptcy Court can only authorize a sale free and clear of an "interest in property" if "applicable, non-bankruptcy law permits sale of such property

"successors in interest" regardless of post-peti- tion employment.

free and clear of such interest." 11 U.S.C. § 363(f)(1). As the Court has interpreted it above, the Coal Act, which is applicable non-bankruptcy law, does not permit the sale of property free and clear of "successor in interest" liability. Therefore, from the plain meaning of the § 363(f) of the Bankruptcy Code, if the Buyer had been found to be a successor in interest within the meaning of the Coal Act, then the Bankruptcy Court would not have authority to allow a free and clear sale. However, having found that the Buyer in this case is not a "successor in interest," Defendants alternative arguments that Plaintiffs' right to Coal Act premiums are "interests in property" which the Bankruptcy Court can authorize a sale free and clear of, or, alternatively, "claims" which can be channeled to proceeds of the sale, work as well.

### C. Defendants Do Not Seek "Discharge" and, Therefore, § 524(e) is Irrelevant

■ Black's Law Dictionary defines "discharge" in the bankruptcy context in the following manner:

The release of the debtor from all of his debts which are provable in bankruptcy, except such as are excepted by the Bankruptcy Code. The discharge of the debtor is the step which regularly follows the filing of a petition in bankruptcy and the administration of his estate. By it the debtor is released from the obligation of all his debts which were or might have been proved in the proceedings, so that they are no longer a charge upon him, and so that he may thereafter engage in business and acquire property without its being liable for the satisfaction of such former debts.

*Blacks Law Dictionary,* Abr. 6th Ed., p. 319.

In their Motion to Sell, Defendants specifically state that "all rights of lienholders holding valid, enforceable and perfected liens shall attach to the proceeds generated from sale of the Property." (Motion to Sell at ¶ 14.) Thus, Defendants do not seek discharge of their debts through the proposed sale. They seek elimination of their future obligations under the Coal Act. Therefore, as Defendants argue, § 524(e) of the Bank-

ruptcy Code dealing with the effect of discharge on debts of the debtor is irrelevant to the issue of whether the bankruptcy court has the authority to allow a sale under the terms that Defendants and the Buyer seek.

### D. The Sale is Not a Sham Transaction

■ A sale under § 363 of the Bankruptcy Code must be in "good faith." *In re Abbotts Dairies of Pennsylvania,* 788 F.2d 143 (3d Cir.1986); *In re Bleaufontaine,* 634 F.2d 1383, 1386 (5th Cir.1981). Section 9722 of the Coal Act deals with "sham transactions." Plaintiffs invoke both the concepts of good faith and sham transactions when they argue that allowing the Buyer in this case to purchase Defendants' assets free and clear of Coal Act obligations will open the floodgates for large coal operators to file for bankruptcy under Chapter 11 and sell their assets to an alter-ego, thereby avoiding their obligations under the Coal Act. (Plaintiffs' Brief at pp. 16–17.) Thus, Plaintiffs, in stating that "avoidance of Coal Act liability is the *sine qua non* for the proposed transaction," (Plaintiffs' Brief at p. 27), imply that the instant sale is a "sham transaction" made in bad faith as prohibited by 26 U.S.C. § 9722. Plaintiffs base their conclusion on Defendants' assertion that Defendants' deal with the Buyer will not go forward unless the Buyer is relieved of Defendants' Coal Act obligations. (Defendants' Brief at p. 9.)

In this regard Defendants state:

[T]he value of the assets to be acquired by Royal Scot cannot support the imposition of such a huge liability [$7,000,000 in Coal Act liabilities]; such an imposition would make the sale economically unfeasible. Thus, Royal Scot will not purchase the Debtors' assets unless the Bankruptcy Court provides that the Debtors' Coal Act obligations remain with the Debtors and do not follow what is left of the Debtors' assets.

(Defendants' Brief at p. 9.)

The Court finds that Defendants' candor in describing the consequences on the proposed sale of sustaining Plaintiffs' Objection is not an admission that the sale is not in good faith or is a sham. Rather, it is a stark and

realistic assessment of the prospects of any sale of these assets.

*Santa Fe Pacific Corp. v. Central States Southeast and Southwest Areas Pension Fund,* 22 F.3d 725 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 483, 130 L.Ed.2d 396 (1995), cited by Plaintiffs is inapposite to the case at bar and distinguishable by its extensive factual record on the issue of intent. *Santa Fe* holds that whether a purpose is "principal" or not is whether it is "one of the principal purposes of the transaction." *Id.* at 730. In *Santa Fe* the court held that if the sale would not occur *but for* a provision avoiding liability for the buyer, then a principal purpose of the transaction was to avoid liability. *Id.* at 729. Similarly, in this case the sale will not occur but for the Buyer's avoidance of liability. (Defendants' Brief at p. 9.) However, the Court finds that this fact does not make such avoidance a principal purpose of the proposed transaction. Avoidance of future obligations for the Buyer is simply a consequence and a condition of the sale. An important distinction between this case and *Santa Fe* is that unlike the statute in *Santa Fe* in which the proposed sale would have resulted in no obligation for the principal to fund the plan of its subsidiary, under the Coal Act and the Bankruptcy Code proceeds from the sale in this case *will* go to pay creditors, including Plaintiffs. Unlike the statute in *Santa Fe,* under the Coal Act Defendants remain liable for past and future unpaid premiums.

Another distinction between this case and *Santa Fe* is that there were extensive factual findings in *Santa Fe* regarding the intent or purposes behind the proposed sale. Under the limited factual record before this Court and the Bankruptcy Court, there is no indication whatsoever that the Buyer and Defendants created this deal so that Defendants could avoid their Coal Act obligations.[5] Rather, Defendants were unable to sell their assets to a buyer willing to assume those obligations and so have proposed a sale that exempts the Buyer from future liability. Bad faith in this case is unsupported by any

facts in the record and the argument that this is a sham transaction designed by Defendants to avoid Coal Act obligations is therefore without merit.

### IV. Conclusion

The Court has given this matter considerable deliberation. The Court recognizes the importance of the continued solvency of the Funds and the desire on the part of Plaintiffs to ensure continuing beneficiary contributions from coal industry employers. However, the Court believes that the agreement between Defendants and the Buyer is permissible under the Bankruptcy Code and the Coal Act and is a noncollusive one, made in good faith, which represents the best possible solution to the situation in which these parties find themselves. If the proposed sale between Defendants and the Buyer goes through, although the Buyer will not be contributing the Defendants' future obligations to the Funds, jobs will be created when the property is mined again and funds will be generated from which to pay some of Defendants' debts, including their past due Coal Act obligations. If the sale does not go through, no one will be in a position to contribute Defendants' future obligations to the Funds, no jobs will be created, and Defendants' debts will not be paid, at least not until Defendants' assets are sold in a piece meal fashion, possibly generating less value than a sale such as this of all of Defendants' assets. The Court believes the lesser of these evils is the greater good.

Therefore, for the above-mentioned reasons, Plaintiffs' Objection is hereby **OVERRULED.** This matter is hereby referred back to the United States Bankruptcy Court for the Southern District of West Virginia.

IT IS SO ORDERED.

---

5. As noted above, Defendants will not avoid their Coal Act obligations under the proposed sale, only the Buyer will avoid its seller's obligations.